PETTIBONE et al. v. THOMSON et al.

(Supreme Court, Special Term, Erie County. May, 1911.)

1. ATTORNEY AND CLIENT (§ 184*)—ATTORNEY'S LIEN—PRIORITY—NOTICE.

Where, when certain claimants of a part of a fund derived from the sale of real estate on foreclosure advanced money to the plaintiff on her promise to repay them out of the proceeds of such property, they had knowledge that foreclosure proceedings were in the hands of certain attorneys, and that appeals subsequently taken were available to the defendants, and that the attorneys would be entitled to a lien on the proceeds for their reasonable charges and disbursements, the rights of the attorneys as against such fund, when finally collected, for 'satisfaction of their lien, were superior to those of the claimants, though the attorneys, when applied to for information by claimants, did not inform them of their claim of lien.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 388; Dec. Dig. § 184.*]

2. ATTORNEY AND CLIENT (§ 184*)—LIEN FOR SERVICES—PRIORITY—"SURPLUS."

Plaintiff in a mortgage foreclosure proceeding borrowed money from certain claimants, agreeing to repay them "out of the surplus" belonging to her from the sale of the property, and agreeing that another claimant should be paid "out of the proceeds of the sale." Held, that the word "surplus" implied that the first of the claimants should be paid out of what was left of the proceeds of the property after all proper deductions had been made, and that neither contract was sufficient to give either of the lenders a claim against the proceeds prior to that of plaintiff's attorneys for their legitimate expenses and fees.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 388; Dec. Dig. § 184.*

For other definitions, see Words and Phrases, vol. 8, pp. 6816-6817, vol. 8, p. 7811.]

3. ASSIGNMENTS (§ 52*)—LIENS (§ 7*)—EQUITABLE ASSIGNMENTS AND LIENS.

A written contract to pay a debt out of a designated fund without transferring any part of the fund, or authorizing the holder to pay directly to the creditor without further intervention of the debtor, does not constitute either an equitable lien on the fund or an equitable assignment thereof.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 107-111; Dec. Dig. § 52;* Liens, Cent. Dig. §§ 26-28; Dec. Dig. § 7.*]

Action by Ralph S. Pettibone, as administrator of the estate of Chauncey S. Pettibone, deceased, and others, against Coridon S. Thomson and others. On motion to confirm a referee's report, appointed by order of the Special Term of the Supreme Court to take proof with reference to the rights and priorities to a fund arising from the sale of certain real estate under foreclosure. Report confirmed.

See, also, 126 App. Div. 922, 111 N. Y. Supp. 1140.

Russell J. Stone, for petitioners.

Bayard J. Stedman, for Henry D. Fargo, individually, and as attorney in fact for Carrie Fargo Bicknell, Augusta Fargo Anderson, and Howell B. Fargo.

O. P. Stockwell, for Sarah A. Thomson, as assignee of one of Mr. Stedman's clients, and also for Frank M. Richards, claimant.

WHEELER, J. It appears from the referee's report, and the evidence returned by him: That on or about the 23d day of September, 1902, the plaintiffs, by the claimants, O. H. & W. E. Hopkins, their attorneys, commenced an action in this court against Coridon S. Thomson et al., for the foreclosure of a certain mortgage, as alleged in the petition, and an answer was interposed, and the issue framed by the pleadings was tried and resulted in a judgment of foreclosure and sale. That an appeal was taken by the defendants, or some of them, from that judgment, to the Appellate Division of this court, for the Fourth department. That the said appeal was argued, and the Appellate Division affirmed the judgment of the trial court, and that thereafter an appeal was taken from the judgment of the Appellate Division to the Court of Appeals of this state, which court also affirmed the judgments of the courts below. That the costs and disbursements taxed in said action, and awarded by said judgments, amounted on the 31st day of July, 1906, to $534.72. That the mortgaged premises were sold, pursuant to said judgment, on May 28, 1910, under the direction of Michael L. Coleman, a counselor of this court, appointed referee for that purpose. That upon said sale the property foreclosed realized the sum of $2,960, which sum the referee is now holding in his hands, awaiting the order of this court directing the distribution thereof among the several claimants to the funds arising from said sale. That the petitioners, O. H. & W. E. Hopkins, as such attorneys, conducted all the proceedings in said action for the plaintiffs, including the preparation of respondents' briefs in the appellate courts. That they ceased to be attorneys of record on September 22, 1909, at which time Messrs. Bartlett & Chamberlain, by an order duly granted, were substituted as attorneys for the plaintiffs in said action. That the stipulation and consent upon which the order making such substitution was entered expressly reserved to said O. H. & W. E. Hopkins their lien upon the subject-matter of the cause of action involved in said litigation, for services rendered, and recognized the assignment of the judgment made to said O. H. & W. E. Hopkins, as collateral security for their costs and disbursements in said action. That on the 11th day of June, 1908, upon the remittitur of the Court of Appeals, a judgment of affirmance was entered, and thereafter, and on January 2, 1909, the plaintiff Sarah A. Thomson, by an instrument in writing duly acknowledged on that day, assigned to said O. H. & W. E. Hopkins the judgment in said action, reciting, among other things, her indebtedness to them for their services and expenses, amounting to $950, which assignment was executed and delivered to said O. H. & W. E. Hopkins as security for the payment to them of said sum of $950, and upon their covenant and agreement that upon the payment to them of said sum, with interest thereon from the

2d day of January, 1909, they would reassign to their assignor, her heirs, representatives, or assigns, all their, and each of their, right, claim, and interest in and to said judgment, and turn over to her all sums of money received by them or either of them, from said judgments, or the sale of said property, over and above said sum of $950, with interest, which assignment was recorded on the 5th day of January, 1908, in the clerk's office of the county of Wyoming. That said assignment was made subject to all the rights and interest of the plaintiff Ralph S. Pettibone, as administrator of the estate of Chauncey S. Pettibone, deceased, and Willis A. Pettibone, in said judgment. That the defendant Coridon S. Thomson, for the purpose of securing an indebtedness to his wife, the plaintiff Sarah A. Thomson, executed and delivered the bond and mortgage described in the complaint, and under which the judgment of foreclosure in this action was made, and thereafter said Sarah A. Thomson duly assigned said bond and mortgage to Chauncey S. Pettibone and Willis A. Pettibone to secure the repayment to them of certain moneys which they had paid out for the use and benefit of said Coridon S. Thomson, by reason of their being sureties upon his official bond as administrator of a certain Pryor estate. That Chauncey S. Pettibone died during the pendency of said foreclosure action, and the plaintiff Ralph S. Pettibone, as administrator of his goods, chattels, and credits, was substituted in his place as plaintiff herein. That on the 26th day of January, 1909, the said Pettibones paid an execution issued upon a decree granted by the Surrogate's Court of Wyoming county, amounting to $860, by reason of their suretyship upon the said bond, no part of which has been paid. That Henry D. Fargo, Robert Fargo, and Lorenzo D. Fargo, brothers of said Sarah A. Thomson, on the 3d day of October, 1907, loaned to said Sarah A. Thomson the sum of $800, and on the same day she executed and delivered to them, as security for said loan, an agreement in writing, dated that day, whereby she covenanted that she would repay said sum of $800, and interest thereon, which agreement is in words and figures following:

"I, Sarah A. Thomson, of the village of Attica, Wyoming county, N. Y., in consideration of the loan to me of the sum of eight hundred dollars by Lorenzo D. Fargo and Robert Fargo, of Lake Mills, Wis., and Henry D. Fargo, of Batavia, N. Y., the receipt of which is hereby acknowledged, do hereby covenant and agree to and with said Lorenzo D. Fargo, Robert Fargo, and Henry D. Fargo, that in consideration of said loan, so made to me, as aforesaid, that, upon the sale of the property of Coridon S. Thomson, under the judgment of foreclosure and sale, rendered in my favor in the said foreclosure action, wherein I am plaintiff, I will pay to said Lorenzo D. Fargo, Robert Fargo, and Henry D. Fargo, the said sum of eight hundred dollars out of the surplus belonging to me, with interest thereon from date, or if I bid in said property upon the sale thereof, in that event, I agree to and with said Lorenzo D. Fargo, Robert Fargo, and Henry D. Fargo, to sell said real property upon written demand of said Lorenzo D. Fargo, Robert Fargo, and Henry D. Fargo, and out of the proceeds thereof, covenant and agree to pay said sum and interest, and I hereby make this agreement a charge and lien upon said real estate at the time it comes into my possession, or I acquire title thereto, next subsequent to the mortgages prior to mine now a lien upon said real property hereinbefore mentioned, hereby agreeing that no liens shall intervene between said mortgages and this lien. "Dated Attica, N. Y., October 3, 1907.

"[Signed]   Sarah A. Thomson.  .[L. S.]"

That the said agreement was prepared by the petitioners, O. H. & W. E. Hopkins, and they did not, when they prepared such agreement, notify the said Fargos, or any of them, of any lien which they now assert against the proceeds of said sale, but that the fact that Sarah A. Thomson was indebted to the said O. H. & W. E. Hopkins for services rendered and expenses incurred in the conduct of said foreclosure action was the subject of discussion between them and the said Fargos, or some of them. That said plaintiff Sarah A. Thomson did not bid in the property on said foreclosure sale, but the same was struck off to strangers to the foreclosure action and this proceeding. That the defendant Coridon S. Thomson, the husband of said plaintiff Sarah A. Thomson, being indebted to the defendant Frank M. Richards in the sum of $385.25, the plaintiff Sarah A. Thomson, at the request of said Richards, on the 4th day of October, 1907, and subsequent to the delivery of the said assignment to the Fargos, executed and delivered to said Richards an agreement in writing, dated that day, whereby she undertook and promised to pay said indebtedness in the words and figures following:

"Whereas, for and upon a good and valuable consideration, the receipt of which is hereby acknowledged, I, the undersigned, have made and delivered to Frank M. Richards, of Alexander, N. Y., my promissory note for the sum of three hundred eighty-five dollars and twenty-five cents, payable with interest: Now, therefore, I covenant and agree to and with said Richards that upon the sale of the real estate of Coridon S. Thomson, of Attica, N. Y., in a foreclosure action brought by me, I will out of the proceeds of such sale pay said note and interest, or, if said property shall be bid in by me, I will thereafter sell the same upon being offered a fair price therefor, and out of the proceeds of such sale will pay said note and interest.

"Dated Attica, N. Y., October 1, 1907.      [Signed]   Sarah A. Thomson."

The referee reported in substance that out of the funds in the hands of the referee the claim of the said Ralph S. Pettibone, as administrator, etc., and Willis A. Pettibone, should be first paid; that the claim of the said petitioners, O. H. & W. E. Hopkins, is a lien on said proceeds and should be next paid. He further reports that, after the payment of said sums hereinbefore mentioned, the plaintiff Sarah A. Thomson, her heirs, representatives, and assigns, are entitled to receive whatever surplus there may be remaining in the hands of the referee.

It is contended by counsel for the said Fargos and said Frank M. Richards that their clients have equitable liens upon the funds in the hands of the referee superior to the claim of said O. H. & W. E. Hopkins for their services as attorneys, and this claim is asserted because it is alleged said attorneys, O. H. & W. E. Hopkins, procured advances to be made by the said Fargos to Mrs. Thomson and her sister to the extent of $800 upon the promise and security of its repayment by her out of the proceeds of the foreclosure sale to be had, and upon the execution by her to them of the agreement of October 3, 1907, and of October 4, 1907, to the said Richards, all of which it is claimed was done without said O. H. & W. E. Hopkins notifying the said Fargos or said Richards that they had in fact any claim or lien as attorneys for the services rendered in the foreclosure action. It is contended that the said O. H. & W. E. Hopkins owed the duty to the said Fargos

and the said Richards of informing them of the extent of their claims and lien for legal services, and, having failed to disclose the nature and extent of any such claims, they are now estopped from asserting any lien on the fund superior to that of the said Fargos for moneys advanced, or by the said indebtedness represented by the said note of the said Richards. In Richards' case, the note mentioned and given him represented an old indebtedness formerly owing by Mr. Thomson to him, and not by the plaintiff Sarah A. Thomson. The petitioners, O. H. & W. E. Hopkins, deny that these parties were not fully advised of the fact that the money was owing and due them as attorneys for services and expenses in this litigation, and assert that such indebtedness was the subject of discussion between them and the Fargos, or rather one of the Fargos, with whom they had talks.

[1] The court has read the testimony carefully, and can reach no other conclusion than that the Fargos, or such of their number as had any dealings with the petitioners, O. H. & W. E. Hopkins, as a matter of fact knew and fully understood that the services of the petitioners in the foreclosure suit remained unpaid and owing. If they were not informed of the fact in express words, the nature and circumstances of the case were such that they had every reason to suppose and believe that such must have been the fact. They knew the litigation had not been determined, that an appeal from the judgment was pending in the Appellate Division of this court, and, if the judgment was affirmed, a further appeal to the Court of Appeals was possible, and such an appeal was in fact subsequently taken; that the proper handling of such matters required the expenditure of time and money, and the incurring of expenses for the very purpose of protecting any security which they might have obtained on the fund realized by the sale in foreclosure. If these parties had reflected at all, they must have realized, even though not told, that the attorneys had claims, not only for past services, but would have claims for future services to be rendered, and that such future services inured quite as much to their benefit as to the benefit of the plaintiff in the foreclosure action, because a reversal would operate to destroy the value of any security they had. It was quite improbable that under such circumstances the attorneys would willingly waive their lien as attorneys, for expenses and services rendered and to be rendered, and subordinate their claims to claims for moneys advanced to either Mr. or Mrs. Thomson by the Fargos. We do not think the evidence discloses any such waiver on their part, or the doing of any act or acts which would properly estop them from asserting their claim in full, superior to any claim of the Fargos or Mr. Richards.

It is asserted and argued that the petitioners, the Messrs. Hopkins, omitted to assert in words that they had or would claim a lien as attorneys upon this fund. It was said, however, in the case of Fisher-Hansen v. Brooklyn Heights R. R. Co., 173 N. Y. 498, 66 N. E. 396 referring to the provisions of the Code giving attorneys liens on their clients' cause of action:

"This act was construed by us in a recent case where the cause of action had become merged in the judgment, and we held that the cause of action

created a lien in favor of the attorney on his client's cause of action, in whatever form it may assume in the course of the litigation, and enables him to follow the proceeds into the hands of third parties, without regard to any settlement before or after judgment, and that all the world must take notice of the lien, and that it is unnecessary for the attorney to give notice of his claim to the other party"—citing Peri v. N. Y. C. & H. R. R. R. Co., 152 N. Y. 521, 46 N. E. 849.

We do not think that the Messrs. Hopkins were required to advise the Fargos that they had an attorney's lien in words, but that the Fargos should take notice of their rights and be put upon their inquiry from the very circumstances of the case, and cannot now claim to have been misled as to the rights of the petitioners.

[2] It is claimed by counsel for the Fargos and for Mr. Richards that the instrument given the Fargos, dated October 3, 1907, in terms provided they should have a lien upon the final surplus superior to that of the attorneys. We do not so read this instrument. It is true that in it no specific mention is made of the claim for services, but the Fargos were to be paid "the said sum of eight hundred dollars out of the surplus belonging to me"; that is, belonging to Mrs. Thomson. What surplus belonged to Mrs. Thomson? Clearly it was only that sum which remained after the expenses of the action, including those incident to the sale, had been paid and deducted from the total sum realized. The very word "surplus" implies what is left after all proper and legitimate deductions have been made. The claim of Richards is to be paid "out of the proceeds of the sale."

It seems to us that there was nothing in either instrument whereby either the Fargos or Mr. Richards had the right to claim the amount agreed to be paid by Mrs. Thomson to them, or either of them, should be paid prior to the payment to O. H. & W. E. Hopkins for their legitimate expenses and services as attorneys. Therefore we are of the opinion that the referee's report, so far as it relates to the claim of the petitioners, O. H. & W. E. Hopkins, as attorneys, establishing the same superior to the claims of the Fargos and Mr. Richards, should be affirmed by this court.

[3] The referee has, by his report, found and reported that the agreement between the Fargos and Sarah A. Thomson, dated October 3, 1907, did not operate as a legal or equitable assignment of the proceeds arising from the sale under the judgment in foreclosure, or any part thereof, and did not create any lien on such proceeds. The same finding is made as to the claim of Frank M. Richards. The referee therefore directs the moneys arising from the sale, after the payment of the claims of the Pettibones and of the petitioners, O. H. & W. E. Hopkins, to be paid to Sarah A. Thomson. It is unquestionably the law that an agreement by parol or in writing to pay a debt out of a designated fund does not give an equitable lien upon the fund or operate as an equitable assignment thereof. Williams v. Ingersoll, 89 N. Y. 508; Thomas v. N. Y. & G. L. R. Co., 139 N. Y. 179, 34 N. E. 877. In Trist v. Child, 21 Wall. 441, 22 L. Ed. 623, the court, referring to this subject, said:

"But a mere agreement to pay out of such funds is not sufficient. Something more is necessary. There must be an application of the fund pro

tanto, either by giving an order, or by transferring it otherwise in such a manner that the holder is authorized to pay the amount directly to the creditor, without the further intervention of the debtor."

See, also, the cases of Holmes v. Bell, 139 App. Div. 462, 124 N. Y. Supp. 301; Donovan v. Middlebrook, 95 App. Div. 365, 88 N. Y. Supp. 607; Wemple v. Hauenstein, 19 App. Div. 555, 46 N. Y. Supp. 288.

As was said in the case of Fairbanks v. Sargent, 117 N. Y. 320, 22 N. E. 1039, 6 L. R. A. 475:

"The test is (even of an equitable assignment) whether the debtor would be justified in paying the debt, or the portion contracted about, to the person claiming to be assignee."

We have diligently searched the record in this proceeding to discover something which would justify this court in directing the payment of the claims of the Fargos and of Mr. Richards out of the balance remaining in the referee's hands. We have been unable to discover any such fact. Nothing but the express consent or order of Mrs. Thomson to such a payment would justify a direction of this kind, and that appears to be lacking in this proceeding.

We are of the opinion, therefore, the referee's report must be confirmed in its entirety. It only remains for this court to give directions as to the payment of the costs of this proceeding. The referee's fees and expenses should be first paid. An allowance is made to the petitioners, O. H. & W. E. Hopkins, of $50 for their costs of the proceedings, and an allowance of $40 to Safford E. North, as attorney and counsel for the Pettibones, to be paid out of said fund. The balance, after the payment of the claims of said Pettibones and of O. H. & W. E. Hopkins, will be paid to Sarah A. Thomson, as directed.

So ordered.