A. L. Gosselin Corporation, Respondent, *v.* Mario Tapparelli fu Pietro of America, Inc., Appellant, Impleaded with Mario Tapparelli fu Pietro and Irving National Bank, New York City, Defendants.

First Department, April 30, 1920.

Pleadings — complaint setting out contract — demurrer — variance — equity — suit to establish equitable assignment and equitable lien upon moneys deposited pursuant to a contract of sale — complaint not stating cause in equity — demurrer sustained.

A demurrer to a complaint setting out a contract admits the contract but does not admit the conclusions of the pleader as to its legal effect, and where there is a variance between the terms of the contract and the legal effect thereof alleged in the complaint the contract controls.

Suit for equitable relief based upon a contract which in substance stated that in consideration of the postponement of the delivery of certain goods by the plaintiff the defendant would leave on deposit with a certain bank a stated sum of money to be withdrawn in certain sums as part payment for monthly shipments, and that the defendant would duly authorize the bank to make said payments pursuant to its letter. The contract further provided that should the plaintiff fail to make deliveries in any of the months mentioned, the defendant should have the right to immediately withdraw from the bank whatever portion of the moneys still remained on deposit. It appeared from the complaint that the defendant deposited securities of the value stated and that when the plaintiff subsequently tendered a delivery of goods and demanded payment, the defendant refused to make the same, whereupon the plaintiff demanded a portion of the deposit from the bank which was also refused. The plaintiff sues on the theory that by reason of the breach of the contract it became entitled to immediate delivery to it by the bank of the remaining deposit, although the defendant notified the plaintiff that it canceled the contract. As equitable relief the plaintiff demands judgment exceeding the amount of the deposit, and that the same be adjudged to be equitably assigned to the plaintiff and to be turned over to it in part satisfaction of its damages, and, furthermore, that the plaintiff be declared to have a lien on the deposit, etc.

Complaint and contract examined and *held,* that in any view of the case, the plaintiff's remedy was an action at law for damages, and that the complaint failed to set forth grounds for equitable relief.

As the facts did not establish an equitable assignment of the deposit, it follows that they do not establish any equitable lien in favor of the plaintiff.

Where there is a demurrer to a complaint framed in equity interposed on the grounds of insufficiency, it should be sustained if the facts do not show that the plaintiff is entitled to equitable relief, and this is so even though the court may spell out a cause of action at law.

LAUGHLIN and SMITH, JJ., dissent, with opinion.

APPEAL by the defendant, Mario Tapparelli fu Pietro of America, Inc., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 1st day of December, 1919, overruling the demurrer to the complaint and granting plaintiff's motion for judgment on the pleadings, consisting of an amended complaint and the demurrer.

*Max M. Hirson* of counsel [*Hirson & Bertini,* attorneys], for the appellant.

*Chauncey E. Treadwell* of counsel [*John E. Roeser,* attorney], for the respondent.

PAGE, J.:

In my opinion the complaint in this action does not state facts sufficient to constitute a cause of action for equitable relief. My brother LAUGHLIN has presented a careful analysis of the complaint, which will render it necessary to present only some of the salient allegations in this opinion. As he states, the determining factor is the contract between the plaintiff and the defendant Mario Tapparelli fu Pietro of America, Inc. (hereinafter called Tapparelli, Inc.). The demurrer admits the contract but does not admit the conclusion of the pleader as to its legal effect, and where there is a variance between the terms of the contract and the legal effect thereof alleged in the complaint, the contract controls. (*Rubin* v. *Siegel,* 188 App. Div. 636, 638.) The contract is evidenced by a letter written by Tapparelli, Inc., to the plaintiff, dated December 13, 1917, which stated that in consideration of the postponement of the delivery of four shipments of five cars each of caustic soda, " We will leave on deposit with the Irving National Bank $20,000 which is to be withdrawn in the following manner: $5,000 as part payment of the January shipment, $5,000 as part payment of the February shipment, $5,000 as part payment of the March shipment and the balance of $5,000 as part payment of the April shipment

* * *. We shall duly authorize the bank to make the said payments pursuant to this letter. In the event that you fail to make deliveries in any of the months mentioned above, we shall then have the right to immediately withdraw from the bank whatever portion of the $20,000 still remains on deposit." Pursuant to this letter Tapparelli, Inc., deposited with the Irving National Bank $20,000 par value of four per cent United States Liberty bonds. Thereafter plaintiff and Tapparelli, Inc., agreed that the five carloads tendered for delivery in December, 1917, should be deemed to be delivered in January, 1918, and said carloads were resold on that date at a loss of $3.56 per 100 pounds and Tapparelli, Inc., authorized the Irving National Bank to pay to the plaintiff the proceeds of $5,000 par value of the bonds on account of the January delivery and the said bank on or about February 13, 1918, paid to the plaintiff $4,833.67. Thereafter on February 25, 1918, the plaintiff tendered for delivery five carloads of said goods, and demanded payment of the agreed price from Tapparelli, Inc., which was refused and plaintiff then demanded of the Irving National Bank the proceeds of $5,000 of the Liberty bonds, which was refused. Plaintiff claims that by reason of this breach of the contract it became entitled to the immediate delivery to it by the Irving National Bank of the remaining $15,000 of said Liberty bonds. It is further alleged that on March 2, 1916 (1918), Tapparelli, Inc., notified the plaintiff that it canceled the contract; that the plaintiff was ready, willing and able to perform the contract on its part and that by reason of the defendants' refusal to perform the contract on their part the plaintiff has sustained damages in the sum of $63,574.52. The plaintiff alleges it has no adequate remedy at law and demands judgment: *First,* that it be adjudged that its damages exceed the sum of $15,000 and that said damages be assessed and determined. *Second,* that the $15,000 in Liberty bonds now held by the Irving National Bank be adjudged to be equitably assigned to the plaintiff and be turned over to it in part satisfaction of payment of its damages. *Third,* that for the purpose of satisfying its damages the plaintiff be declared to have a lien on said bonds; that the value thereof be determined and if manual delivery is impracticable that they be sold by and under direction of

the court, and that the proceeds be applied to the satisfaction of plaintiff's damages, and that plaintiff have judgment for the balance against the defendants Tapparelli and Tapparelli, Inc., or that the judgment provide that it shall not be a bar to an action at law to recover the remainder of its damages.

Unless the Irving National Bank was authorized to pay the proceeds of the bonds directly to the plaintiff without the intervention of Tapparelli, Inc., there was not an equitable assignment. An agreement to pay out of a designated fund is not sufficient. (*Bacon* v. *Schlesinger*, 171 App. Div. 503; affd., 224 N. Y. 690.) The words in the contract "we will leave on deposit" and "we shall duly authorize the bank to make the said payments" and the absence of any words tending to show that the bank held the funds in trust for the plaintiff indicate, in my opinion, that the agreement was for the bank to pay only upon the authorization of Tapparelli, Inc., at the time of the acceptance of each shipment. That was the practical construction of the parties. When the first five carloads were resold to the plaintiff, the defendant Tapparelli, Inc., authorized the bank to pay the proceeds of the $5,000 bond to the plaintiff. When the plaintiff made a tender of the February delivery and demanded the payment of the $5,000, the bank refused. That Tapparelli, Inc., was to retain control over the fund is further shown by the last clause of the agreement, reserving to Tapparelli, Inc., the right to withdraw from the Irving National Bank any portion of the $20,000 remaining on deposit immediately upon the failure of the plaintiff to make any one of the deliveries of caustic soda.

The facts, not being sufficient to show an equitable assignment, do not establish an equitable lien. As was said by Judge EARL: "Whatever the law may be elsewhere, it must be regarded as the settled law of this State that an agreement, either by parol or in writing, to pay a debt out of a designated fund does not give an equitable lien upon the fund, or operate as an equitable assignment thereof." (*Williams* v. *Ingersoll*, 89 N. Y. 508, 518.) This agreement to deposit the bonds was not a part of the original contract of sale whereby the plaintiff in reliance upon this credit entered into the contract. By its terms a certain amount was to be directly paid after each delivery and acceptance thereof. The plaintiff has not brought

its action for a specific performance of the contract nor does it keep its tender of delivery good. It seeks to recover damages for a breach of the contract of sale, which would be an action at law, and to have this fund applied in reduction of damages. But the contract does not provide for the application of this fund to damages but to a portion of the purchase price. The plaintiff contends that the reason it is entitled to resort to equity is that these bonds have since been assigned to third parties. If this be a fact then unless these third persons are made parties, the plaintiff could not enforce its lien. There being no appropriation of this fund to the payment of the damages, there would be no equitable lien established. (*Gibson* v. *Stone,* 43 Barb. 285, 291; *Wright* v. *Ellison,* 1 Wall. 16, 22.) Viewed in any light the cause of action of the plaintiff would be one at law for damages and not in equity. Where a complaint is framed in equity and equitable relief is demanded, and a demurrer interposed for insufficiency, if the facts do not show the plaintiff is entitled to equitable relief the demurrer should be sustained even though the court might spell out a cause of action at law. This is now well settled and the reason for such decision is fully discussed in *Spring* v. *Fidelity Mutual Life Ins. Co.* (183 App. Div. 134, 139). (See, also, *Consolidated Rubber Tire Co.* v. *Firestone Tire & Rubber Co.,* 135 App. Div. 805; affd., 199 N. Y. 536; *Low* v. *Swartwout,* 171 App. Div. 725; *Logan* v. *Fidelity-Phenix Fire Ins. Co.,* 187 id. 153, 154.) For the foregoing reasons, in my opinion, the order should be reversed, with ten dollars costs and disbursements, and plaintiff's motion for judgment on the pleadings denied, with ten dollars costs, with leave to plaintiff to serve an amended complaint on payment of said costs.

DOWLING and MERRELL, JJ., concur; LAUGHLIN and SMITH, JJ., dissent.

LAUGHLIN, J. (dissenting):

The order is predicated on the sufficiency of the complaint for equitable relief to have it declared that the plaintiff is entitled to have certain bonds held by the defendant bank in escrow or in trust delivered to it or to have a lien thereon in its favor declared and foreclosed. Appellant contends

that plaintiff has no title to or lien on the bonds and that the complaint merely shows an agreement to pay a debt with the bonds, which does not give plaintiff an equitable title or lien as it is not shown that there was such an application of the bonds to the payment of the debt that the bank was authorized to pay over the bonds to plaintiff without further authority from the debtor. Appellant also claims that the allegations of the complaint are not sustained by the letter of the appellant with respect to the deposit of the bonds. The letter constituting the contract is quoted in the complaint and of course in such circumstances the letter is controlling and the demurrer does not admit an erroneous construction thereof.

The amended complaint shows that the plaintiff is a domestic corporation and was engaged in buying and selling caustic soda; that Mario Tapparelli fu Pietro was engaged in business at Milan, Italy, and elsewhere and that appellant was a domestic corporation acting as his agent here and elsewhere and that he owned all of its capital stock save two shares to qualify two named individuals as directors and that he organized, owned and controls it for his individual interest and benefit and that he is a citizen and resident of Italy; that on or about September 20, 1917, he was here temporarily and entered into a contract with the plaintiff for the purchase from it of twenty carloads of caustic soda, ten carloads thereof at ten cents a pound for October delivery " net cash against railroad bill of lading " and ten carloads at $9.92½ per 100 pounds " cost and freight New York, shipment second half of October from the factory, each against railroad bill of lading and the said defendant agreed to accept the said goods on delivery as aforesaid and to pay therefor the agreed price above mentioned; " that he returned to Italy and the appellant, as his agent, assumed the execution and completion of the contract and that appellant has claimed and now asserts that it has succeeded to all the rights and liabilities of its said principal with respect to the contract; that at appellant's request and on payment by it of $10,000 on account, plaintiff consented to postpone the delivery of the caustic soda and thereafter consented to a further postponement by which five carloads were to be delivered in December, 1917, and five in March, 1918, and that the plaintiff in December, after it had duly

tendered five carloads, at the request of appellant, consented to postpone the December shipment until April, 1918, in sole reliance upon and in consideration of the agreement of the appellant, thereinafter quoted, to deposit $20,000 in four per cent Liberty bonds with the defendant bank, to be held in trust for the plaintiff and to be paid to it in installments of $5,000 each in part payment on each delivery of goods during the months of January, February, March and April, 1918, respectively; that the contract for the deposit of the bonds was evidenced by a letter of December 13, 1917, written by appellant to the plaintiff. The letter is quoted in full in the complaint. It recites that in consideration of plaintiff's delaying until April, 1918, the shipment of the five cars due in December, 1917, and in consideration of its delivering five cars in each of the months of January, February, March and April, 1918, appellant would leave on deposit with the defendant bank $20,000, $5,000 to be drawn as part payment for the shipment for each of said four months, and that if appellant should agree with plaintiff to sell the entire twenty cars between the date of the letter and the month of April, 1918, then the $20,000 was to be used as part payment of the purchase price and that such deposit was in addition to the $10,000 already paid on account of the purchase price of the caustic soda. The appellant further stated in the letter as follows: " We shall duly authorize the bank to make the said payments pursuant to this letter," and that should plaintiff fail to make deliveries in any month, appellant should have the right " to immediately withdraw from the bank whatever portion of the $20,000 still remains on deposit." It is then alleged that the bank duly accepted the trust and that the bonds were deposited with it and held by it in trust for the plaintiff to be paid to plaintiff in installments according to the terms of the letter. It is further alleged that about the 7th of January, 1918, appellant and the plaintiff agreed that the five carloads consisting of 388,175 pounds tendered for delivery in December 1919 — evidently meaning December, 1917 — should be deemed to be delivered in January, 1918, and that said five carloads were on that date resold by appellant to plaintiff at $6.44 per 100 pounds and appellant authorized the bank to pay the plaintiff the proceeds of $5,000, amounting

to $4,833.67, on account of said January delivery, and the bank duly paid the same to plaintiff on or about the 13th of February, 1918; that thereafter and on or about February 25, 1919 — evidently meaning 1918 — plaintiff duly tendered delivery of five carloads, the purchase price of which was $35,763, to appellant and demanded payment, which was refused, and thereafter plaintiff demanded of the bank the proceeds of $5,000 of the bonds, which was refused, and that thereby appellant and its principal broke the contract with the plaintiff and plaintiff became entitled to immediate delivery of the remainder of the bonds or the proceeds thereof; that plaintiff duly performed excepting as prevented by the acts of defendants; that on or before March 2, 1916 — evidently meaning 1918 — appellant notified plaintiff that it canceled and abrogated the contract and refused to be bound any longer by the provisions thereof; that plaintiff was ready, willing and able to perform and would have performed but for such refusal on the part of defendants, and that by reason of such refusal on the part of defendants to perform, plaintiff has sustained damages in the sum of $63,574.52 with interest; that appellant is wholly insolvent and any judgment against it would be uncollected and Pietro is without the jurisdiction of the United States and that plaintiff is without remedy unless said bonds are paid to it on account of said indebtedness; that unless the court declares that the plaintiff has a lien on the bonds and requires them to be delivered to the plaintiff or sold for its benefit, the bank will turn them over to the other defendants or to their assigns; that appellant and said Pietro on or about the 5th of April, 1919, executed an assignment of their right, title and interest in the bonds to the attorneys of record for appellant herein and to one Carroli, now or formerly an officer of appellant. It is further alleged that appellant on March 4, 1918, brought an action against the plaintiff in the Municipal Court to recover $1,000 damages for an alleged breach of the contract by this plaintiff in failing to make a proper tender of delivery of five carloads in February, 1919 — evidently meaning 1918 — and that by reason thereof the contract was abrogated and appellant was damaged in said amount; that judgment was recovered by the plaintiff therein, which was reversed by the Appellate

Term and the complaint dismissed upon the merits, with costs, which it is alleged was an adjudication that this plaintiff performed the contract in all respects excepting as performance was prevented by acts of the defendants, and that appellant broke the contract; and that the Appellate Term and the Appellate Division refused to permit an appeal.

It is then alleged that plaintiff has sustained damages in the sum of $63,574.52 and has no adequate remedy at law, and judgment is demanded for the assignment of the remaining bonds to it in part payment of the damages, and that it be declared that it has a lien thereon, and if delivery be impracticable, then that they be sold and the proceeds applied in payment of plaintiff's claim and that plaintiff have judgment against appellant and Pietro for the balance, or that it shall be provided in the judgment that it is rendered without prejudice to an action at law by the plaintiff for the balance.

It seems to me in the circumstances that a cause of action in equity is set forth. The bonds were delivered to the bank to be applied in payment for the goods when delivered, not merely as security, for it was expressly provided that the bonds should be used to make the payments. That, I think, constituted an appropriation of the bonds to that purpose and an equitable assignment thereof, for they were expressly appropriated to the payment for the goods to be delivered to plaintiff when the goods were delivered by it which, of course, includes a tender of delivery. (*Lynch* v. *Conger*, 181 App. Div. 221; *Donovan* v. *Middlebrook*, 95 id. 365; *Van Kannel Revolving Door Co.* v. *Astor*, 119 id. 214; *Hofferberth* v. *Duckett*, 175 id. 480.) The bank was to hold them until delivery or tender of delivery of the goods by plaintiff and they were to be returned to appellant only in case the plaintiff failed to perform the contract. I am of opinion that plaintiff shows a right to the bonds; but it is immaterial whether the plaintiff has acquired an equitable title or merely an equitable lien, for it was one or the other. (*Schoenherr* v. *Van Meter*, 215 N. Y. 548; *Muller* v. *Kling*, 149 App. Div. 176; affd., 209 N. Y. 239.) From the fact that the plaintiff was to receive either cash or delivery of the bill of lading to which it could attach drafts and thereby insure payment before delivery, it is reasonably to be inferred that one purpose of the deposit

of the bonds was to insure the acceptance of the goods by the defendant, and to make up in part the loss to the plaintiff if the appellant failed to accept the delivery when duly tendered. It is evident that the market price of caustic soda had fallen when this new contract was made and plaintiff exacted the payment of $10,000 and the delivery of the bonds, referred to in the letter as money, to the bank as a condition of extending the time within which the appellant was to accept delivery and pay for the caustic soda. The adequacy of a remedy at law must be pleaded by defendant and cannot be presented by a demurrer on that ground to a complaint. (*Bloomquist* v. *Farson*, 222 N. Y. 375.)

In my opinion, therefore, the demurrer was properly overruled and the order should be affirmed, with ten dollars costs and disbursements.

SMITH, J., concurs.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs, with leave to plaintiff to serve an amended complaint on payment of said costs.