[No. 18465. *En Banc.* June 24, 1924.]

## W. A. ANDERSON, *Respondent,* v. FARMERS STATE BANK OF CONNELL et al., *Appellants.*[1]

ASSIGNMENTS (15, 16)—BANKS AND BANKING (7, 26)—EQUITABLE ASSIGNMENTS—OF SPECIAL FUND—SPECIAL DEPOSITS. An instrument constitutes an equitable assignment of sufficient wheat to pay and satisfy a chattel mortgage on a harvester, needed by the mortgagor to harvest the crop, where it provided that the bank holding the crop mortgage would release sufficient wheat to pay the debt on the harvester, and hold such wheat in warehouse for the mortgagee's account; hence, where the wheat was converted into money by the receiver of the bank, the money is recoverable in lieu of the property, as in the case of a special deposit in the bank.

Appeal from a judgment of the superior court for Franklin county, Truax, J., entered June 22, 1923, upon findings in favor of the plaintiff, in an action to establish a preferred claim against an insolvent bank, tried to the court. Affirmed.

*D. E. Twitchell,* for appellants.

*Driscoll & Horrigan,* for respondent.

[1]Reported in 226 Pac. 1011.

HOLCOMB, J.—This case is here on appeal on the transcript of the record without a statement of facts. The question to be determined is whether the findings of the trial court justify the conclusions of law and judgment.

The findings of the trial court may be summarized as follows: That the Farmers State Bank of Connell was a domestic corporation which, during the month of November, 1921, passed into liquidation under the state banking department; that, on about June 3, 1919, one Hadley had made, executed and delivered to respondent herein, for value, his two certain promissory notes, one for the sum of $1,100, due on or before November 1, 1919, with interest at ten per cent per annum from date until paid; the other for the sum of $1,100, due on or before October 1, 1920, with interest at ten per cent per annum from date until paid; that, at the time of the execution of the notes and as part of the same transaction, Hadley made, executed and delivered to respondent a chattel mortgage upon certain property described as a Holt combined 45-horse-power harvesting machine, which mortgage was duly filed for record in the auditor's office of Franklin county; that thereafter, during the year 1921, the Farmers State Bank of Connell held a mortgage on the personal property and crops to be grown during the year 1921 by Hadley, which was duly filed for record in the manner provided by law; that Hadley failed to pay the notes above mentioned, when the same became due, and respondent informed him and the Farmers State Bank of Connell that he intended to foreclose his chattel mortgage on the combined harvester; that the Farmers State Bank of Connell advised respondent that the bank held a chattel mortgage on all the crops of Hadley to be grown during the year

1921, and that the use of the combined harvester upon which respondent held a mortgage was necessary to harvest the crops; that if respondent would grant additional time to Hadley until the crops were harvested, the Farmers State Bank of Connell would release to respondent 1,100 bushels of wheat from its mortgage, or enough to retire the note due respondent in November, 1919; that the promise to make such settlement was made orally and in writing as set forth in "Exhibit B" attached to respondent's complaint; that respondent, relying upon the promise of the bank that he would be subrogated to the rights of the bank in so far as the same affected 1,100 bushels of wheat, or enough to retire the note held by him, refrained from foreclosing his mortgage until after the wheat described in the mortgage of the bank was delivered to the warehouse and the receipts therefor turned over to the receiver of the bank; that respondent demanded of the receiver of the bank that he turn over to respondent sufficient wheat to satisfy his $1,100 note, with interest thereon, which the receiver refused to do; that Hadley having failed to pay respondent's notes, respondent foreclosed his mortgage and the property was sold to the highest bidder for cash, leaving a deficiency judgment; that the crop covered by the mortgage of the bank was actually turned over to the receiver of the bank and sold, and the receiver received the proceeds thereof in a sum largely in excess of the amount necessary to satisfy respondent's note of $1,100, with interest, as provided therein, the receiver having received approximately $20,000 from the sale of the crop. Other findings were made which are not necessary to notice.

The "Exhibit B," referred to in the findings of fact, is as follows:

"Farmers State Bank, Connell, Wash.,
                                        June 20, 1921.
"Mr. F. A. Hadley,
    "Connell, Washington.
    "Dear Sir:—Regarding that $1100 note which the writer guaranteed in some way in 1919 and about which there is some litigation, wish to state that in order to bring about a just settlement of this matter, the bank will release 1100 bushels of wheat from its mortgage, or enough to retire this note, and you are at liberty to advise Mr. Anderson that the bank will hold this amount of wheat for his account and will deliver same to him as soon as your wheat is in the warehouse and the receipts turned in to us.
                        "Yours very truly,
                        "J. B. Helmick, Cashier."

The theory of respondent, sustained by the trial court, was that the wheat covered by and referred to in "Exhibit B," sufficient to satisfy respondent's note for $1,100 and interest, became the property of, and belonged to, respondent. The receiver came into possession of the wheat after his appointment and converted the same into money. The receiver having appropriated the wheat, augmented the insolvent estate by the amount of the claim of respondent, for which reason respondent is entitled to the allowance of his claim as a preferred claim, since he is claiming but his own property which has been changed by the receiver from wheat into money.

Appellant contends that the agreement evidenced by "Exhibit B" was nothing more nor less than a promise to pay to respondent the sum of $1,100 out of a special fund, and that such promise in no wise gives respondent a preferred claim against the assets of the insolvent bank. The argument of appellant is based upon the premise that the relation created was that of debtor and creditor between respondent and the insolvent

bank. A part of the text of 5 C. J., 913, 914 and 915 is quoted by appellant as follows:

"An agreement to pay a debt out of a certain fund will not operate as an equitable assignment of the whole or any part of such fund, such an agreement being a mere promise, and not sufficient to transfer control over the fund. Where, however, the circumstances amount to a present irrevocable appropriation of the fund such transactions constitute equitable assignments."

The following authorities are also cited to sustain that position: *Pettibone v. Thompson*, 72 Misc. Rep. 486, 130 N. Y. Supp. 284; *Patterson v. Citizens National Bank*, 236 S. W. (Tex. Civ. App.) 130; *Christmas v. Russell*, 81 U. S. 69, 20 Law Ed. 762; *Gosselin Corporation v. Mario Tapparelli, etc.*, 191 App. Div. 580, 181 N. Y. Supp. 883; *Smedley v. Speckman*, 157 Fed. 815.

An examination of the foregoing authorities, however, shows that in none of them was the agreement like the one in the case at bar. For instance, in the Texas case, 236 S. W., *supra*, the agreement was that the debtor would sell a farm he owned, or, in any event, would pay the debt with any revenue that he could get off the farm through the sale of crops or stock; that he would repay the debts out of the produce of the farm. Undoubtedly there was no assignment of any particular fund by virtue of that agreement. The opinion cited another Texas case, *Davis & Goggin v. State National Bank*, 156 S. W. (Tex. Civ. App.) 321, which case also held that a mere agreement, whether by parol or in writing, to pay a debt out of a designated fund is not in itself sufficient to constitute an equitable assignment; but there must be an appropriation *pro tanto,* either of the specific fund, or by transferring the amount otherwise in such manner that the holder is

authorized to pay the amount directly to the creditor. The last case, in effect, sustains the judgment in this case.

In the instant case, the debtor agreed to appropriate 1,100 bushels of wheat if the mortgagee of the wheat would consent to the payment of respondent's debt in order that respondent would not foreclose his mortgage and take the harvester machine away from the debtor. To the same end the mortgagee of the wheat agreed in writing with the debtor and with respondent and authorized the debtor to advise respondent that the bank holding the mortgage on the wheat would hold 1,100 bushels of wheat, release that amount from its mortgage, or enough to satisfy respondent's debt and interest, and deliver such quantity of wheat to respondent, as soon as the debtor's wheat was in the warehouse and the receipts turned in to the bank.

If that did not constitute an equitable assignment it is impossible to perceive what would. Thus in 5 C. J., p. 909, an equitable assignment is defined as follows:

"In order to work an equitable assignment there must be an absolute appropriation by the assignor of the debt or fund sought to be assigned to the use of the assignee. The intention of the assignor must be to transfer a present interest in the debt or fund or subject-matter; if this is done the transaction is an assignment; otherwise not."

And on page 915 is this:

"Thus where the direction to pay is assented to by the agent, and relied upon by the creditor, it constitutes an assignment. So where the entire fund is placed under the control of the creditor, with power to satisfy his debt out of it and pay the surplus to the assignor, this constitutes a valid assignment. And where an agreement is made between a debtor and his creditor that the debt of the latter should be paid out of a fund belonging to the debtor in the hands of a third party,

and the agreement is communicated to such third party and is assented to by him, this will be effective in equity to transfer an interest in such fund to the extent of his debt to the creditor.''

*Carlson v. Kies,* 75 Wash. 171, 134 Pac. 808, 47 L. R. A. (N. S.) 317, where the assignment relied upon is an instrument of special deposit with a bank which became insolvent five days after the execution of the instrument, was nowhere as explicit as the one before us now, and where the money was commingled with the general funds of the bank, this court held that there was a special deposit of the fund in the bank.

The last cited case was followed in *Hitt Fireworks Co. v. Scandinavian-American Bank,* 114 Wash. 167, 195 Pac. 13, 196 Pac. 629, where Judge Main carefully distinguished the facts creating a special deposit and those creating a general deposit or the relation of debtor and creditor, and the principles applying thereto. See, also, *Rugger v. Hammond,* 95 Wash. 85, 163 Pac. 408.

The last cited case is also authority for the recovery of the money in lieu of the property where the property appropriated to the debt has been converted into money after the assignment and appropriation.

Under our own precedents, there can be no question but that the instrument in this case constituted an equitable assignment of sufficient wheat to pay and satisfy respondent's debt and mortgage, and appropriation by the receiver of the wheat, and that the proceeds thereof in his hands constitute a special fund out of which respondent is entitled to have his debt satisfied.

The judgment of the trial court is right, and it is affirmed.

TOLMAN, FULLERTON, PARKER, BRIDGES, PEMBERTON, and MITCHELL, JJ., concur.