(30 Misc. Rep. 488.)

CORBIN v. DWYER et al.

(Supreme Court, Trial Term, Rensselaer County. February, 1900.)

1. LUNATICS—COMMITTEE OF ESTATE—MORTGAGES—VALIDITY.
     A mortgage on the property of a lunatic, executed by the committee of his estate without authority of the court, and acknowledged by them individually, and which in all respects is in the same form in which they would individually execute a mortgage on their own property, except that they describe themselves in the first clause of the mortgage as "committee of the estate" of the lunatic, is insufficient to create a lien on the property.

2. SAME.
     Code Civ. Proc. § 2351. provides that, on application made by the committee to mortgage the real property of a lunatic, "the court must make an order directing him to file with the clerk a bond," etc. Section 2356 provides that, before a mortgage of a lunatic's property can be made, the committee must enter into an agreement therefor, subject to the approval of the court. *Held*, that a mortgage of a lunatic's property made by his committee without a bond, or entering into an agreement to be approved by the court, is invalid.

3. EQUITABLE SUBROGATION.
     The doctrine of equitable subrogation will not be invoked in favor of one advancing money under an invalid mortgage of a lunatic's property, where the money advanced was used simply to pay debts of the lunatic, for which the mortgagee was not answerable, and the payment of which was not necessary in any way for her protection.

4. MORTGAGES—VALIDITY.
     An invalid mortgage, executed by the committee of a lunatic, will not be upheld as a lien on the property on proof that a subsequent purchaser from the lunatic orally agreed to pay the mortgage, since such agreement, at most, would be only a promise by the purchaser to the lunatic to pay a debt for which the lunatic himself was not personally liable.

Action for partition by Daniel Corbin against Edward Dwyer and others. Decree rendered.

Shaw, Bailey & Murphy (William J. Roche, of counsel), for plaintiff.
Potter & Lillie, for defendant Gifford.
Patterson, Bulkeley & Van Kirk, for defendants Crapo and Buckley.
C. I. Webster, for defendant Dwyer.

EDWARDS, J. In this action for partition the only litigated question is the validity of the mortgage held by the defendant Sophia Gifford as a lien on the premises described in the complaint. On June 9, 1891, Spencer C. Buckley became the owner in fee of the premises, and so remained until his conveyance thereof to the defendant Edward Dwyer, on December 5, 1896. In May, 1896, in a proceeding in the county court of Rensselaer county, Spencer C.

Buckley was adjudged a lunatic, the defendants George E. Crapo and Franklin B. Buckley were appointed a committee of his person and estate, and thereupon qualified as such committee. On December 5, 1896, in a proceeding in the said court, it was adjudged that the commission of lunacy issued against the said Spencer C. Buckley, and the inquisition taken thereon, be superseded and determined; that the committee of his person and estate be discharged; and that he thereafter be entitled to the custody and control of his property. On the same day, Spencer C. Buckley conveyed the premises to the defendant Edward Dwyer, who, on November 1, 1898, conveyed an equal undivided one-fourth thereof to the plaintiff. On June 30, 1896, while Spencer C. Buckley was the owner of the premises, the defendants George E. Crapo and Franklin B. Buckley executed a mortgage thereon to the defendant Sophia Gifford for $2,500, which mortgage was recorded on the 22d day of July, 1896, in the Rensselaer county clerk's office. This instrument does not purport to be executed by Crapo and Buckley as committee of the estate of Spencer C. Buckley, nor in pursuance of any authority to mortgage his estate, but is executed and acknowledged by them individually, and is in all respects in form such a mortgage as they would individually execute upon their own property, except that the parties of the first part are therein described as George E. Crapo and Franklin Buckley, "committee of the estate of Spencer C. Buckley." The mortgage recites a bond that day executed "by the said George E. Crapo and Franklin B. Buckley to the said party of the second part," but the evidence shows that no bond was in fact executed.

I think it quite evident that this instrument does not on its face purport to be a mortgage made by Crapo and Buckley as committee of Spencer C. Buckley. There is not the slightest evidence in the instrument that it was executed by them as such committee, except the words, "committee of the estate of Spencer C. Buckley," following their names in the first clause of the mortgage, and these words are only descriptio personæ. As the individual mortgage of Crapo and Buckley, this instrument could not, of course, create any lien upon the property of the lunatic, nor is the effect otherwise if we regard the mortgage to have been executed by them as the committee of the estate of the incompetent person, without authority of the court. Notwithstanding the appointment of a committee of the estate, the title to the real property of a lunatic is vested in him, and neither at common law nor by statute has the committee any power to mortgage or sell the same without an order of the court. Nor has the court, independent of statute, any such power. Code Civ. Proc. § 2339; Walrath v. Abbott, 75 Hun, 445, 27 N. Y. Supp. 529; Losey v. Stanley, 147 N. Y. 570, 42 N. E. 8.

The evidence shows that in the month of June, 1896, proceedings were instituted in the Rensselaer county court to procure authority for the committee to execute a mortgage. None of the papers have been filed in the clerk's office, and some of them are lost. Although the mortgage does not purport to be executed in pursuance of any authority of the court, and was, in fact, executed before the order therefor was made, yet if resort be had to those pro-

ceedings to uphold the mortgage they are found to be ineffectual for that purpose. They are so fatally defective as not to constitute a basis for a valid mortgage. The sole power of the court to authorize a mortgage of the real property of a lunatic is given by title 7, c. 17, Code Civ. Proc. Section 2351 provides that, upon an application made by the committee to mortgage real property of a lunatic, "the court must make an order, directing him to file with the clerk a bond, in such a form, in such an amount, and with such sureties, as it directs, conditioned for the faithful discharge of his trust," etc. In this proceeding no such order was made, nor was any bond filed. Section 2356 provides:

"Before a sale, mortgage, release, or lease can be made pursuant to the final order, the special guardian or the committee must enter into an agreement therefor, subject to the approval of the court; and must report the agreement to the court under oath. Upon the confirmation thereof by the order of the court, he must execute, as directed by the court, a deed, mortgage, release or lease."

Here there was no agreement made by the committee, nor report to the court, nor any order of confirmation, as required by this section. There are other irregularities in the proceedings, the consideration of which is not here of importance. I think it quite clear that the omission of the requirements of these two sections renders the proceedings fatally defective, and they cannot form the basis of a valid mortgage. The sole power of the court to authorize a mortgage of the property of an incompetent person is derived from this statute, and all proceedings not in substantial conformity with its provisions are void. Battell v. Torrey, 65 N. Y. 295; In re Valentine, 72 N. Y. 184; Ellwood v. Northrup, 106 N. Y. 172, 12 N. E. 590. The good faith and fairness of the transaction cannot affect the result. Courts cannot accept good faith and fairness as a substitute for the positive requirements of the statute.

The counsel for the defendant Gifford contends that, notwithstanding the ineffectual attempt to create a valid mortgage lien on the premises, the doctrine of equitable subrogation can be successfully invoked for its maintenance. This is sought to be accomplished on the ground that the moneys loaned by the mortgagee to the committee were used to pay the debts of the lunatic, for which his estate was liable, and to pay for which the committee made the mortgage. I do not think the facts of the case bring it within any recognized principle of the doctrine of subrogation. At the time of the execution of the mortgage there was no lien by mortgage, judgment, or otherwise upon the lands of the lunatic, other than a mortgage of $500, held by the defendant Dwyer, which was not yet due. It is claimed that the moneys received by the committee of the lunatic were used in paying this mortgage, which was satisfied of record, and other indebtedness of the incompetent person. It does not appear that the mortgagee had any knowledge of the existence of such debts, or to what purpose the moneys were to be applied, or how they were in fact applied. So far as she was concerned, the transaction was simply a loan of money to Crapo and Buckley, and the acceptance of the mortgage to secure the same. But, had

she known the money was to be applied to the payment of the debts of the lunatic, that fact and their actual application to the extinguishment of such debts would not entitle her to be subrogated to the claims of the creditors, whose debts were thus paid. In furnishing the money for the payment of the debts of Spencer C. Buckley, she was a mere volunteer. Neither she nor her property were in any way legally answerable for the claims paid. She was not in the situation of a surety, nor was she in any way compelled to pay them to protect her own rights. Viewed in the light most favorable to the mortgagee, she simply furnished the money to pay the debts of the lunatic,—debts for which she was not answerable, and the payment of which was not necessary in any way for her protection. These facts do not entitle her to subrogation. Banta v. Garmo, 1 Sandf. Ch. 385; Baldwin v. Moffett, 94 N. Y. 82; Acer v. Hotchkiss, 97 N. Y. 395; Koehler v. Hughes, 148 N. Y. 511, 42 N. E. 1051.

The doctrine of subrogation has not been carried so far as to hold that one who simply lends money to pay debts of another is entitled to be subrogated to the rights of the creditors whose debts are paid. If it were otherwise, it could, in this instance, be of no avail to the mortgagee, for the reason that, with the exception of the $500 Dwyer mortgage, the debts paid were simply contract debts, and no principle of subrogation could make them a lien on the real estate.

Nor can the mortgage be upheld as a lien on the ground that Dwyer, in his purchase from Buckley, orally agreed and assumed to pay the Gifford mortgage. There is no proof of such an oral agreement, and, if there were, it would be unavailable to the defendant Gifford, for the reason that it would be, at most, a promise to Buckley to pay a debt for which he himself was not personally liable. The case of the mortgagee is one of peculiar hardship, but the facts do not bring it within any principle of the doctrine of subrogation which can afford her relief, and I am of opinion that her mortgage should be adjudged to be invalid as a lien on the premises sought to be partitioned.

Ordered accordingly.