THE FIDELITY TRUST COMPANY OF BUFFALO, NEW YORK, Plaintiff, *v.* THE INTERNATIONAL RAILWAY COMPANY and INTERNATIONAL TRACTION COMPANY, Defendants.

Supreme Court, Erie Special Term, March, 1922.

**Equity — pleading — complaint in equity must show equitable cause of action — equitable relief — subrogation — when complaint in equity by holders of notes issued by traction company to defray expense of financing the defendant, an independent railway company, demurrable — failure to allege that note holders paid any creditor of the defendant to whose rights they became subrogated or that they loaned the money in reliance on an agreement by defendant to reimburse traction company for expenses of financing.**

A complaint framed in equity cannot be sustained unless it shows a cause of action for equitable relief.

While a demurrer admits the facts alleged in the complaint and all inferences that may be drawn therefrom by fair and reasonable intendment, it does not admit any conclusion of law pleaded.

The right of subrogation only arises when one pays a debt or discharges an obligation for which another is primarily liable and his own liability is only secondary.

A domestic street railway corporation incorporated for the purpose of consolidating various street railway companies took over these companies subject to their outstanding bonds. A traction company was organized under the laws of another state to hold the stock of the railway company and to assist in financing it by issuing and selling its own securities for the benefit of the railway company. The traction company acquired all the capital stock of the railway company and issued bonds amounting to $30,000,000, secured by a collateral trust mortgage covering all the capital stock of the railway company. The mortgage provided that the railway company should not mortgage any of its

property or assets while any of said bonds were outstanding. In order to refinance the railway company it became necessary to retire the aforementioned. bonds, which was accomplished. The railway company having been relieved from the restrictive covenant in the mortgage securing the bonds which were retired issued refunding and improving five per cent bonds, amounting to $60,000,000, secured by a mortgage to the plaintiff as trustee. The expenses incurred in carrying out the refinancing of the railway company were advanced in part by the traction company and in part by individuals at the request of the railway company. In order to obtain funds for the reimbursement of such expenses and to pay the balance thereof, the traction company under the provisions of an indenture given by it to plaintiff, a domestic banking corporation, as trustee, issued its certain serial six per cent notes for loans made directly to it. At that time the traction company held all the capital stock of the railway company and for a time paid the principal and interest of the notes as the same fell due, but the railway company having discontinued dividends on its stock the traction company defaulted in the payment of interest on bonds issued by it secured by all the capital stock of the railway company. All the capital stock of the railway company and all the property of the traction company was sold on account of said default and the traction company became wholly insolvent.

The indenture pursuant to which the notes were issued contained no reference whatsoever to the railway company or to any agreement on its part in the premises. The traction company used the proceeds of the notes to reimburse itself and others for expenses paid by them and to defray the remaining unpaid expenses of said financing. In an action brought against both the railroad company and the traction company to recover the unpaid balance due upon the notes and to impress a lien upon the earnings of the railway company in favor of the note holders for the payment of the notes, the plaintiff claimed it was entitled to be subrogated to the right of the traction company to enforce the alleged obligation of the railway company to meet the notes from its earnings, but the only allegations of the complaint tending to connect the railway company with the notes were general and to the effect that they were issued by the traction company as agent of the railway company and for its sole benefit. It was, however, alleged that the railway company agreed to provide the traction company with funds to meet the notes, but it was not alleged that those who loaned the money thereon were parties to that agreement or even that it was brought to their attention or that they were induced to loan the money in reliance upon said agreement, nor was there any allegation to the effect that the note holders paid any creditor of the railway company to whose rights they could become subrogated. Upon sustaining a demurrer to the complaint for insufficiency and granting leave to amend, *held*, that those who took the notes did not loan money for the payment of any indebtedness owing by the railway company to the traction company, and that, therefore, there was no basis for the application of the rule of subrogation.

While the complaint as framed was good as stating a cause of action at law, it could not be sustained as one for equitable relief.

DEMURRER by defendant The International Railway Company to the complaint for insufficiency.

*Maulsby Kimball*, for plaintiff.

*James C. Sweeney* (*Penney, Killeen & Nye*, attorneys), for defendant International Railway Company.

LAUGHLIN, J. The complaint alleges that the plaintiff is a domestic trust corporation organized under the Banking Law; that the demurrant, which for brevity will be referred to as the

railway company, is a domestic street railway corporation incorporated in 1899 for the purpose of consolidating or merging various street railway companies in the city of Buffalo and vicinity, many of which had outstanding bonds secured by mortgages on their properties, and they were then taken over by the railway company subject to said obligations; that the other defendant, which for brevity will be referred to as the traction company, was incorporated in 1899 under the laws of New Jersey as a holding company to hold the stock of the railway company and aid and assist in financing it by issuing and selling its own securities for the benefit, uses and purposes of the railway company and as its agent; that the defendants were united in interest, having substantially a common control, and the traction company, in issuing and selling notes, as thereinafter alleged, acted solely as the agent and for the benefit of the railway company and at its instance and the proceeds of the notes were applied solely to its uses and purposes; that in order to raise funds to pay off the mortgages on the properties so taken over by the railway company after the same matured and to finance its capital and other requirements, including extensions, improvements and repairs, the traction company took and held all of its capital stock and thereafter made and executed and issued its own bonds in the aggregate of $30,000,000, and to secure the payment thereof issued its collateral trust mortgage pledging as security for the bonds all of said capital stock and thereafter negotiated and sold certain of the bonds and applied part of the proceeds in payment of maturing obligations of the railway company or of its constitutent companies and deposited the obligations so redeemed as additional collateral security for its bonds; that said mortgage executed by the traction company, which is made part of the complaint, provided, among other things, that the railway company should not mortgage any of its property or assets while any of the bonds secured by said mortgage were outstanding, and that by reason of these and other provisions of the mortgage the railway company became wholly dependent upon the traction company for providing for its financial needs, and it was agreed that all of the financing of the railway company should be done through the traction company for and on its behalf and as its agent, and the traction company agreed that it would take such steps and do such acts as were required for financing the railway company and would apply the proceeds of the sale of its bonds so far as required to the uses and purposes and for meeting the financial requirements of the railway company; that after said mortgage was issued, the traction company issued and sold certain of its bonds and used part of the proceeds in taking up

and acquiring certain underlying bonds of the railway company and for the purpose of raising funds needed and required by it pursuant to said agreement; that in or about the year 1910 the railway company was in need of further funds on account of the growth of the property and of additional extensions and improvements required to enable it to keep pace with the growth of the city and to fulfill the requirements of its franchises, and since substantially all of the bonds of the traction company had either been sold or were being held to secure underlying liens and said agreement prohibited the placing of another mortgage on the property " it became necessary to revise the entire financial structure of the defendants " and to provide other means of financing the railway company, and it was thereupon determined to retire the trust bonds issued by the traction company and to issue " a refunding and improving mortgage " upon the property of the railway company so that it should thereafter be in a position to do its own financing by the issuance and sale of its own bonds, and that in order to accomplish these purposes and pursuant to the agreement, the railway company on and shortly prior to July, 1910, discontinued the payment of dividends on its stock, and the traction company, being without funds to pay, defaulted in the payment of the interest on its bonds, and the defendants for the purpose of relieving themselves from said restrictive agreements combined and conspired together and undertook to bring about the retirement of said bonds and to substitute other securities issued under an indenture without such restrictive covenants, and in carrying out that plan caused to be formed a protective committee of the collateral trust bondholders who invited the bondholders to deposit with J. P. Morgan & Company as a depositary their bonds, and pursuant thereto a large majority of said outstanding bondholders so deposited their bonds and thereafter, largely as a result of the steps taken by said committee, the collateral trust bonds were surrendered and exchanged for bonds issued under an indenture to be described presently or were called for payment and paid and retired and the indenture under which they were issued was canceled and the railway company was relieved from said restrictive covenants; that thereafter and pursuant to the agreement and understanding between the defendants, and to carry out and consummate the purposes aforesaid, the traction company on November 1, 1912, made a new issue of collateral trust four per cent gold bonds aggregating $18,335,000, and to secure the same executed an indenture to the Guaranty Trust Company of New York as trustee, which indenture is also made a part of the complaint, pledging all of the stock of the railway company and certain

of its bonds, which had been received by the traction company on the redemption of certificates of indebtedness which had been pledged also by the traction company as security for the original collateral trust bonds; that thereupon, pursuant to said agreement and understandings and for the purposes aforesaid, the railway company issued refunding and improving five per cent gold bonds maturing in 1962, the aggregate of the authorized issue being $60,000,000, and to secure payment thereof, on November 1, 1912, issued to the Bankers' Trust Company of New York, as trustee, a mortgage which is also made part of the complaint; that the expenses incurred in carrying into effect said plans and particularly in procuring the exchange of the bonds were in part advanced by the traction company and in part by various individuals at the request of the railway company, and in order to obtain funds for the reimbursement thereof and to pay the balance of such expenses the traction company at the request and as the agent of the railway company issued certain serial six per cent debenture collateral notes of the aggregate amount of $500,000 maturing serially at the rate of $50,000 per annum from February 1, 1914, and that said notes were issued under the provisions of an indenture given by the traction company to the plaintiff as trustee on the 1st of February, 1913, a copy of which is made part of the complaint, and that said notes were sold and the proceeds thereof used for the payment of said expenses and otherwise for the benefit of the railway company; that said notes were issued and sold in the name of the traction company at the request of the railway company and it agreed with the traction company and with the plaintiff as such trustee and with the purchasers of the notes that it would pay the interest and installments of principal as they matured out of the earnings or surplus of the railway company " as and provided that there was surplus or earnings and thereby in equity made the said notes a lien on any earnings or surplus " of the railway company until the principal of and interest on the notes should be paid; that said obligations and expenses so paid from the proceeds of said notes were incurred in the name of the traction company but at the request and for the sole benefit of the railway company and the notes were issued and sold by the traction company at the request and for the benefit of the railway company and acting as its agent and the railway company received the benefit of the proceeds thereof and promised and agreed to repay the amount thereof either by the declaration of an additional dividend on its stock for that purpose or by paying the amount in cash out of its earnings and became and is obligated to pay the amount of the notes; that the notes are and constitute

an equitable claim against the railway company and a lien upon its assets and earnings; that after the issuance of said notes the railway company paid the interest thereon and the installments of principal maturing down to and including the 1st day of February, 1918, by paying for that purpose to the traction company extra dividends on its stock but that the installment of principal of the notes maturing February 1, 1919, and the interest then due were not paid and no funds were provided therefor by the railway company and no part of the principal or interest has since been paid, and by virtue of the provisions of the indenture under which the notes were issued the entire outstanding balance of the notes, aggregating $250,000, with interest from February 1, 1918, has become due and payable and payment thereof has been duly demanded and the railway company has failed to provide the funds for the payment thereof either by the declaration of dividends on its stock or otherwise; that the railway company by virtue of the facts alleged became and is obligated to pay said unpaid balance to the holders of the notes and to the plaintiff; that the railway company has discontinued the payment of dividends on its stock and in or about the month of January, 1919, the traction company being without funds defaulted in the payment of the interest due on its $18,335,000 collateral trust four per cent gold bonds and thereafter the collateral held as security therefor, comprising all of the capital stock of the railway company and substantially all of the property of the traction company, was sold on account of said default and the traction company has become and is wholly insolvent; that thereafter said debenture notes to the extent of $225,000, constituting a large majority thereof, were deposited with the plaintiff as depositary pursuant to an agreement, which is also made part of the complaint, and the plaintiff holds the notes pursuant thereto; that the railway company has a surplus and earnings from which said notes and interest could be paid and will in the future have earnings which could be and should be made applicable to the payment thereof and the plaintiff has no adequate remedy at law. On these facts plaintiff demands judgment that the unpaid balance of the debenture notes amounting to $250,000 and interest thereon from February 1, 1918, be " decreed and determined to be an obligation of the said defendants and an equitable lien against *its* surplus earnings and assets, and upon any future earnings and surplus, and that defendants be decreed to pay the said sum to the plaintiff; " that the plaintiff be decreed to have an equitable lien and to be subrogated to any claims and rights of the traction company to have repaid to it " the unpaid amount of said notes and interest, or the amounts

to be paid by " the traction company " from the proceeds of said notes at the request and for the benefit of " the railway company and judgment against the traction company for the sum of $250,000 and interest thereon from February 1, 1918; and for other and further relief as in the premises may be just and equitable and costs.

The demurrer admits the facts alleged and all inferences that may be drawn therefrom by fair and reasonable intendment but not any conclusion of law pleaded; and the complaint being plainly framed in equity cannot be sustained unless it shows a cause of action for equitable relief. *Gosselin Corp.* v. *Mario Tapparelli Fu Pietro, Inc.,* 191 App. Div. 580; *Logan* v. *Fidelity-Phenix Fire Insurance Co.,* 187 id. 153; *Low* v. *Swartout,* 171 id. 725.

In support of its demurrer, the railway company challenges the right of the plaintiff to maintain this action for the holders of the notes, and also contends that no cause of action in favor of the traction company against it, to which the plaintiff or any one else could become subrogated, is shown. Those points have been considered, and while I do not deem them wholly without merit, I am of opinion that if there were no other objection to the complaint, it could be sustained.

The learned counsel for the plaintiff does not contend that it has been alleged that any express agreement was made by the railway company for the assignment of any of its earnings or obligating it to create therefrom a fund and assign or hold the same for the redemption of the notes or that any express agreement was made by which the holders of the notes were to become subrogated to any right or claim of the traction company or any one else against the railway company; but he strenuously argues that an agreement for an assignment of the requisite amount of the net earnings of the railway company and for a lien thereon may be implied and enforced by a court of equity; and that the facts alleged give the holders of the notes a right of subrogation against the railway company on its agreement with the traction company to provide the funds from its earnings by the declaration of a dividend or the payment of cash to meet the notes, which were issued at its request and used for its benefit. It is neither alleged nor claimed that those to whom the notes were issued directly paid any debts owing by either defendant and thereby became subrogated to the rights of the creditors whose debts were paid. The notes, by their terms, are the obligations of the traction company only and the money was loaned directly to it and it became directly liable to the holders of the notes, since, although representing a disclosed principal, it saw fit to contract in its own name (*Hernandez*

v. *Brookdale Mills, Inc.*, 194 App. Div. 369, 381) without their being subrogated to the rights of any of the creditors who were thus paid. The traction company used the proceeds of the notes to reimburse itself and others for said expenses paid by them and to defray the remaining unpaid expenses of said refinancing. Plaintiff's only claim with respect to subrogation is that it is entitled to be subrogated to the right of the traction company to enforce the obligation of the railway company to meet the notes from its earnings. When the notes were issued, the traction company held all of the capital stock of the railway company and for a time, according to the allegations of the complaint, paid the principal and interest as the same fell due but the stock was subsequently sold and, therefore, the declaration of a dividend thereon now would not inure to the benefit of the traction company or to the holders of the notes. That, however, would not relieve the railway company of its express contract obligation to provide the funds from its earnings to pay the notes or of its obligation as the borrower of the funds and, although not in form, yet in effect, the maker of the notes. *Hoag* v. *Town of Greenwich*, 133 N. Y. 152; *Hernandez* v. *Brookdale Mills, Inc., supra; Campbell* v. *Poland Spring Co.*, 196 App. Div. 331; *Thomas* v. *N. Y. & G. L. R. Co.*, 139 N. Y. 163. I am unable to see any possible theory for the application of the rule of subrogation here unless it be on the theory that the proceeds of the notes were delivered to the traction company in payment of an obligation owing to it by the railway company; but that is not alleged, and the only agreement alleged to have been made by the railway company with respect to any payment of money is that it would pay the interest and installments of principal falling due on the notes out of its earnings or surplus provided there were earnings or surplus from which payment could be made. The indenture made between plaintiff and the traction company pursuant to which the notes were issued is in writing and under seal and it contains no reference whatsoever to the railway company or to any agreement on its part in the premises; but if it be true, as alleged, that the traction company at all times was acting as agent for a disclosed principal, then both agent and principal are doubtless liable on the notes under the authorities lastly cited. The right of subrogation only arises when one pays a debt or discharges an obligation for which another is primarily liable and his own liability is only secondary. I fail to find any allegation in the complaint to the effect that the noteholders paid any creditor of the railway company to whose rights they could become subrogated. They merely loaned money to the traction company or to the railway company or both; and if they paid any debt owing by either

company, it would seem that they did so voluntarily without any inducement or request therefor on the part of the railway company and, therefore, they could not thus make themselves its creditors (*Nat. Bk. of Ballston Spa* v. *Bd. of Sup'rs.*, 106 N. Y. 488), and since it is not alleged that they were induced or even requested by the railway company to pay any debt owing by it, even if they had paid such debt, they would not be entitled to become subrogated to any right or remedy of a creditor, whose claim they thus voluntarily paid, against it. *Vose* v. *Conkling*, 153 App. Div. 40; *Blydenburg* v. *Seabury*, 104 id. 141; *Sommers* v. *Schrader*, 59 id. 340; *Corbin* v. *Dwyer*, 30 Misc. Rep. 488; mod. and affd., 57 App. Div. 630; Sheldon Subrogation (2d ed.), § 243, p. 363; Harris' Law of Subrogation, § 808, pp. 556, 557; 37 Cyc. 370.  The learned counsel for the plaintiff contended on the argument and claims in the brief that *the noteholders were requested and induced* by the railway company to make the loan to the traction company, in effect, on an express understanding and agreement that it would advance from its earnings by dividends or in cash the necessary funds to meet the installments of principal and interest as they fell due. These facts are neither expressly alleged nor can they be fairly implied from the allegations of the complaint.  The only allegations contained in the complaint tending to connect the railway company with the notes are general allegations to the effect that the obligations were issued by the agents for its sole benefit which would render it liable directly as a principal and further allegations, not that it agreed with those who loaned the money on the notes so to provide the traction company with funds to pay them, but to pay them itself; and although it is alleged that the railway company agreed so to provide the traction company with funds to meet the notes, it is not alleged that those who loaned the money were parties to that agreement or even that it was brought to their attention or that they were induced to loan the money in reliance thereon.  The demurrer must be decided on the issues presented thereby.  If I were to express an opinion with respect to the effect of the facts so claimed but not alleged, my views would, of course, be obiter and not binding; but they might possibly embarrass the plaintiff in amending the complaint or in some manner prejudice one or the other of the parties, and, therefore, I shall keep to the record as now presented.

It is quite plain, I think, that those who took the notes did not loan money for the payment of any indebtedness owing by the railway company to the traction company.  The transaction as set forth by the allegations of the complaint and the indenture under which the notes were issued, shows merely an agreement

for the loaning of money to the traction company and, therefore, there is no basis for the application of the rule of subrogation. In view of the allegations of the complaint with respect to the traction company's having acted in all of these matters as the agent of the railway company, in discussing the plaintiff's theory of the liability on the part of the railway company to the traction company, to which it claims the right to be subrogated, I do not wish to be understood as expressing an opinion that the traction company could enforce the alleged agreement on the part of the railway company to provide funds for the payment of these notes, for it would seem that the railway company is itself directly liable on the notes as a disclosed principal in whose behalf they were made (*Hernandez* v. *Brookdale Mills, Inc., supra; Campbell* v. *Poland Spring Co., supra*), and if, as is alleged, the traction company was merely the agent, it is not clear upon what theory it could compel its principal, the railway company, to make such appropriation from its earnings in advance of payment by the traction company, even though the railway company had agreed so to do.

I am also of opinion that the action cannot be maintained to impress a lien upon the earnings of the railway company in favor of the noteholders for the payment of the notes. The complaint alleges an agreement by the railway company with the traction company and the holders of the notes and the plaintiff as trustee that it would pay the interest and installments and principal as they matured out of its earnings or surplus, provided that it had earnings or surplus. Those allegations tend to show a direct agreement between the railway company and the holders of the notes; but the learned counsel for the plaintiff says that it was only intended by these allegations to claim an indirect agreement made between the railway company and the traction company, in effect, for the benefit of the holders of the notes. No claim is made that the doctrine of *Lawrence* v. *Fox*, 20 N. Y. 268, is applicable, but if the agreement was made by the railway company for the benefit of the holders of the notes, then under the doctrine of that case, the agreement would inure to their benefit. But, as I view the case, it is immaterial whether such an agreement was made between all of the parties as alleged, or only between the railway company and the traction company, for in any event the allegations are insufficient to show an agreement for an assignment or lien upon any of the earnings of the railway company and the case, I think, falls within the general rule, applicable to agreements to pay out of a particular fund, under which the creditor acquires no assignment or lien and remains a general creditor with a right of action at law under the agreement or for damages for a breach

thereof. *Christmas* v. *Russell*, 14 Wall. 69; *Trist* v. *Child*, 21 id. 441; *Thomas* v. *N. Y. & G. L. R. Co.*, *supra*; *Williams* v. *Ingersoll*, 89 N. Y. 508; *Brill* v. *Tuttle*, 81 id. 454; *Donovan* v. *Middlebrook*, 95 App. Div. 365; *Addison* v. *Enoch*, 48 id. 111; affd., 168 N. Y. 658; *Bacon* v. *Schlesinger*, 171 App. Div. 503; affd., 224 N. Y. 690; *Gosselin Corp.* v. *Mario Tapparelli Fu Pietro, Inc.*, *supra*.

As the complaint is now framed, I am of opinion that the plaintiff does not show a cause of action for equitable relief but only one at law. The demurrer is, therefore, sustained, with costs, but with leave to plaintiff to amend on payment of costs.

Demurrer sustained.