CENTRAL TRUST CO. v. RICHMOND, N., I. & B. R. CO.

(Circuit Court, D. Kentucky. May 3, 1892.)

1. MECHANICS' LIENS—CONSTRUCTION OF LAWS — SUBCONTRACTORS — RAILROAD COMPANIES.

The provision of Laws Ky. 1888, that persons furnishing labor or materials for the construction of railroads and other public improvements, "by contract, express or implied, with the owner or owners thereof, or by subcontract thereunder, shall have a lien thereon" for the price of such labor and materials, does not embrace one who furnishes such labor and materials under a contract with a subcontractor.

2. SAME—WHO ENTITLED TO.

The language, "all persons who perform labor or furnish labor," does not intend only those who perform manual labor. It will embrace the services of a civil engineer, who actually superintended and directed the construction of the work.

3. SAME—TIME OF FILING—SUFFICIENCY OF CLAIM.

The further provision of the act that persons performing such labor must file a verified statement of the amount claimed, in the clerk's office, "within 60 days after the last day of the last month in which any labor was performed, or materials or teams furnished," was sufficiently complied with, in the case of laborers hired by the month, who, while working, filed a statement and claim for the previous month, for which they had not been paid, and after they ceased working filed another claim and statement for such labor performed, after, and not included in, the first statement. The requirement that the statement must set forth the "amount due, and for which the lien is claimed," does not necessitate a detailed statement of the claim.

In Equity. Bill by the Central Trust Company of New York against the Richmond, Nicholasville, Irvine & Beattysville Railroad Company to foreclose a mortgage. Heard on demurrers to intervening petitions setting up contractors' and mechanics' liens.

Butler, Stillwell & Hubbard and Richards, Weissinger & Baskin, for plaintiff.

Humphrey & Davis, Stone & Sudduth, St. John Boyle, C. G. Gilbert, Ernest McPherson, and Matt O'Doherty, for interveners.

BARR, District Judge. One of the principal questions raised by the demurrers to the intervening petitions is whether the lien given by the act of 1888 extends to labor and materials furnished or performed under contracts made with subcontractors, and others beyond subcontractors. The title of the act is:

"An act to create a lien on canals, railroads, and other public improvements, in favor of persons furnishing labor or materials for the construction or improvement thereof."

And the first section is:

"That all persons who perform labor, or who furnish labor, materials, or teams, for the construction or improvement of any canal, railroad, turnpike, or other public improvement in this commonwealth, by contract, express or implied, with the owner or owners thereof, or by subcontract thereunder, shall have a lien thereon, and upon all the property and franchises of the owner thereof, for the full contract price of such labor, materials, and teams so furnished or performed, which said lien shall be prior and superior to all other liens theretofore or thereafter created thereon."

The second section provides that the liens given shall in no case exceed, in the aggregate, the contract price of the original contractor; and, if they shall exceed the price agreed upon between the original contractor and the owner or owners, then there shall be a pro rata distribution of the original contract price among the lienholders.

The third section provides that—

"No lien provided for in this act shall attach unless the person who performs the labor, or furnishes the labor, material, or teams, shall, within sixty days after the last day of the last month in which any labor was performed, or materials or teams were furnished, file in the county clerk's office of each county in which the labor was performed, or materials or teams furnished, a statement in writing, verified by affidavit, setting forth the amount due therefor, and for which the lien is claimed, and the name of the canal, railroad, or other public improvement upon which it is claimed. Said claim shall be filed and indorsed by the clerk of said court, giving the date of its filing."

The fourth section provides that—

"Liens acquired under this act shall be enforced by proper proceedings in equity, to which other lienholders shall be made parties, but such proceedings must be begun within one year from the filing of the claim in county clerk's office, as required by the third section of this act."

The rule of the common law, that statutes in derogation thereof are to be strictly construed, has been changed in this state, and it has been declared that "all statutes shall be construed with a view to carry out the intention of the legislature." This would be the rule of construction in the absence of such a statute, but it is not always easy to ascertain the intention of the legislature. The language of the first section is, "all persons who perform labor, or who furnish labor, * * * by contract * * * with the owner or owners, * * * or by subcontract thereunder, shall have a lien," etc., and the controlling words on this inquiry are, "by subcontract thereunder." "Subcontract" is defined to be "a contract under another," and "thereunder," "under that or this." See Worcester and Webster. The sentence means contracts under the contract made with the owner or owners. Worcester defines a "subcontractor" as "one who contracts for the principal contractor." This, we think, is the meaning of the sentence, when taken in connection with the entire section, and there is nothing in the other provisions of the act to change or modify this construction. The act gives persons who labor, and furnish labor, materials, and teams, for the construction of a railroad, a lien on the entire property, to the extent of the original contract price for the construction, and this right to the lien commences when the labor commences, or the material begins to be furnished; and thus this inchoate right of lien practically suspends both the right of the owners of the railroads to pay, and the original contractor's right to demand payment of the owners, to the extent of the contract price or the value of work to be done, and materials to be furnished, under subcontracts, if there be any. This suspension continues during the time the work is being done, or the materials are being furnished, and more than 60 days thereafter, unless the subcontractor consents

to such payments, or in some way waives his lien. In view of this fact, it would seem to be just that the original contractor should have, not only the right to determine whether he would have a subcontractor, but also who should continue to be contractors, and thus lienholders, with equal rights as himself.

Whatever liens may be allowed subcontractors are of equal dignity with those of the original contractor, and are, as between him and the owner, deducted from the original contract price, and lessen to that extent his lien. It may be assumed, from the provisions of this act, that it was not intended for the benefit of owners of railroads and other public improvements; but the legislature having given a direct lien for work done and materials furnished, to the extent of the original contract price of the construction or improvement, the owner must, of necessity, see to the application of his payments. This necessity of the owner to see to the application of his payments gives him the right to suspend payments to the original contractor, to the extent of the possible claim of subcontractors. Thus the original contractor has the deepest interest, not only in selecting his subcontractors, but in controlling the possible liens they may create. This he can do, under the construction indicated; but if these liens may be created by any and all persons who may be employed or contracted with by contractors and those under them, the original contractor is helpless, since he has no contractual relations with or control over them. To illustrate, suppose the owners of a right of way contract with B. to construct for them a complete railroad of, say, 100 miles in length, for $2,000,000, and B. sublets the construction of one half of it for $900,000, and himself constructs the other half. B. can readily protect himself from the lien of the subcontractor, as affecting his own lien. This can be done by a proper contract, or by payments to him based upon the contract price. But if the law be that any and all of those who labor, or furnish labor and materials, for the construction of the railroad under said subcontractor, have a lien for their work done and materials furnished, then B. is perfectly helpless, since the contract price, or the reasonable value of the work done and the materials furnished, may be $1,100,000, instead of $900,000. The liens for this $1,100,000 must share equally with other liens, including the lien of the original contractor. Thus, in the case given, B. would get only $900,000 of the $2,000,000, instead of $1,100,000, as he was clearly entitled. It may be suggested that, in distributing money among these lienholders, the proper basis would be $900,000, and that each lienholder under the subcontractor should get only nine elevenths, instead of the entire amount, but such is not the law.

The second section provides that—

"The liens provided for in the foregoing section shall in no case be for a greater amount, in the aggregate, than the contract price of the original contractor; and, should the aggregate amount of liens exceed the price agreed upon between the original contractor and the owner, * * * then there shall be a pro rata distribution of the original contract price among said lienholders."

If, therefore, we consider this act only from the standpoint of a lienholder, and ignore the interest and convenience of the owner of railroads and other public improvements, the construction given, which we think is fully sustained by the language of the act, must be the correct one. This act, in so far as it gives a direct lien to a subcontractor who has no contractual relations with the owner of the property, and without notice to or the consent of the owner, is a departure from the previous policy of this state; and this court, in construing the act, should not make the departure greater than the plain and usual meaning of the act would indicate. See "Mechanic Law" (Gen. St. c. 70) and "Local Mechanic Lien Laws," (Acts 1831, 1858, Loughborough St. 409; Myers St. 300;) Fetter v. Wilson, 12 B. Mon. 90; Institute v. Young, 2 Duv. 584.

The argument that the construction indicated will permit the act to be evaded, and thus needy and industrious people may fail to get the benefit of the law, is one not to be addressed to the court, but the legislature.

The argument is, however, without force, wherever made, because, if the meaning of the law is once definitely settled, persons will adjust their contracts and acts to that construction, and there need not be any hardship or loss, except such as may result from willful stupidity or ignorance. This a state cannot provide against, and it would be vain and hopeless to attempt it. The decisions in the different states are in seeming conflict, and it is unnecessary to review all of them, as each state has its own peculiar law and state policy. In some of the states it seems to be the policy to create the lien, without regard to any contractual relation with the owner of the building or structure, and in other states to confine the lien to those who have contractual relations, directly or indirectly, with the owners of the building or structure, and, in some others, to combine the two by having regard to the contractual relations of the parties, by limiting the persons who, beside the owners, can create a contractual relation under which a lien can be created under the statute. The late railroad lien law of Wisconsin, and also that of Indiana, seems to be of the first class mentioned above. See Mundt v. Railroad Co., 31 Wis. 454, also Redmond v. Railway Co., 39 Wis. 426; Colter v. Frese, 45 Ind. 97. The laws of other states are to the same effect. The statute of New Hampshire, as construed by the courts of that state, seems to be of the second class. See Jacobs v. Knapp, 50 N. H. 71.

The act of 1888. as we construe it, is of the third class, as are also the lien laws of Pennsylvania, West Virginia, Illinois, and the mechanic law of Wisconsin. In Harlan v. Rand, 27 Pa. St. 514, the court, after stating the great inconvenience of an indefinite extension of the liens under the construction of the statute contended for by counsel, asked, "What, then, is the limit of these lien rights?" and said:

"We must look to the law for an answer, and we find it in the twelfth section. It distributes all the parties to the work into three classes, according to their several functions: First, the owner; second, the contractor,—called, also, 'architect' and 'builder;' and, third, the workmen and material men.

The law establishes one link, and only one link, between the owner, on the one hand, and the workmen and material men, on the other. It requires the lien to be founded on contract, and it recognizes no one as having power to contract, so as to make a lien against the building, except the owner and the contractor or architect." Page 516.

The West Virginia statutes provide that any mechanic, etc., who performs work or furnishes materials "by virtue of any contract with the owner thereof, or his agents, or any person who, in pursuance of an agreement with any subcontractor, shall, in conformity with the terms of the contract with such owners or agents, do or perform any labor or work, or furnish any material, in the erection or construction of a house," etc., shall have a lien thereon. In McGugin v. Railway Co., 33 W. Va. 67, 10 S. E. Rep. 36, the court held a contractor one removed from the original contractor had no lien under this statute. In Illinois the lien law of 1869 provided that—

"Every subcontractor, mechanic, workman, or other person who shall hereafter, in pursuance of the purposes of the original contract between the owner of any lot or piece of ground, or his agent, and the original contractor, perform any labor or furnish materials in building, altering, repairing, beautifying, or ornamenting any house, * * * shall have a lien for the value of such labor and materials upon such house," etc.

The Illinois courts held that the statute did not extend and give a lien to a contractor with a subcontractor. Newhall v. Kastens, 70 Ill. 160; Rothgerber v. Dupuy, 64 Ill. 454; Smith Bridge Co. v. Louisville, N. A. & St. L. R. Co., 72 Ill. 506. See, also, to the same effect, Kirby v. McGarry, 16 Wis. 68; Harbeck v. Southwell, 18 Wis. 425.

Another question raised by the demurrers is as to the character of labor which is included within this statute, and for which a lien is given. There is nothing in the language of the act, or in its spirit, which indicates that it was intended only for the benefit of day laborers, or those who perform manual labor. The language is, "All persons who perform labor, or furnish labor, * * * for the construction or improvement of any * * * railroad, * * * by contract," etc., "shall have a lien." If the labor is performed for the construction or improvement of the railroad of the defendant, it is within the terms and the spirit of the act. The civil engineer who surveys and lays out the route over which the road is constructed performs labor for its construction, and any civil engineer who supervises the construction of the bridges or the roadbed is within this act. Indeed, any necessary labor which is performed in and for the construction of the road of the defendants is within the act. It will be observed that the language of the act is, "All persons who perform labor, or who furnish labor, * * * for the construction of a railroad," etc., and not that all persons who perform manual labor, or who furnish manual labor, for the construction, etc. There is no kind of labor designated, but it must be "for the construction" of the railroad or other public improvements. The purpose for which the labor is furnished or performed, and not its kind, is to limit the extent of the lien to be acquired. The supreme court says:

"It is somewhat difficult to draw the line between the kind of work and labor which is entitled to a lien, and that which is mere professional or supervisory employment, not fairly to be included in those terms." Mining Co. v. Cullins, 104 U. S. 179.

The court was then considering and construing a statute which gave a lien to "any person or persons who shall perform any work or labor upon any mine * * * shall be entitled to a miner's lien," etc., and it then held that a person who was general manager of the development of a mine, and did some manual labor, was entitled to a lien under the act for all of his work, including superintendence. But that act seemed to give a lien only for manual labor, as is shown by being required to be performed "upon" a mine, and then a "miner's lien" given. In many of the lien laws there is a clear intent to confine the lien to, and be for the benefit of, material men and mechanics and laborers only, but when the act declares that the labor performed and the labor furnished for the construction of railroads, etc., without limiting words, it must, by its terms, include all labor which is necessary for the construction, and which was actually performed or furnished for that purpose, whether that be skilled or unskilled labor.

It is not intended to declare that a consulting engineer, whose sole business and duty is to advise as to the routes to be taken, or the kind of bridge to be used, by a railroad or construction company, is within the act; but I am of the opinion that a civil engineer, who has actually superintended and directed the construction of the work, is within the statute. A consulting engineer may or may not have a lien for his labor, depending whether it was performed for the construction of the road. Foushee v. Grigsby, 12 Bush, 76, which declares that the character of labor performed by an architect or superintendent was not given a lien by the act of 1858, is not conclusive upon this court in construing the act of 1888. The act of 1858 was a mechanic's and material man's lien law, and that only. The lien was by the first section given to "carpenters, joiners, brick masons, stone masons, plasterers, turners, painters, brickmakers, * * * and all others performing labor," etc; and the sixth section gave the lien to "any journeyman, laborer, subcontractor, carpenter, joiner, brick mason, stone mason, plasterer, turner, painter, brickmaker, * * * or other person performing labor," etc. Thus it will be seen that unless the labor performed was by one of the class named, or of like class, the lien was not given. The act of 1888 declares that "all persons who perform or furnish labor * * * for the construction of a railroad," without classifying them, or limiting the persons who may perform or furnish the labor.

The remaining question is as to the time and character of the claim of lien which is to be filed in the clerk's office. The third section of the act requires the person who performs the labor, or furnishes the labor, materials, and teams, "within sixty days after the last day of the last month in which any labor was performed, or materials or teams furnished, file in this county clerk's office of each county in which the labor was performed or materials furnished, a statement, in writing, verified by affidavit, setting forth the amount due there-

for, for which the lien is claimed, and the name of the canal, railroad, or other public improvement upon which it is claimed." The time indicated is within 60 days after the last day of the last month in which any labor was performed or materials furnished. I apprehend the labor performed or materials furnished mean the labor performed or materials and labor furnished by the person claiming the lien. There are some of the claimants of lien for labor who have filed two statements in the clerk's office, claiming liens. These are persons who were hired, and should have been paid, by the month. This being the fact, they, while working, filed a statement and claim of lien for the previous months for which they had not been paid; and, after they ceased working, filed another claim and statement for the labor performed thereafter, and not included in the first statement. We think this within the spirit of the act, and is a good claim of a lien, if otherwise properly done, for both demands for labor performed. In such cases the labor is by the month. Each month constitutes a complete cause of action for the month's labor, whether the labor is continued or discontinued. It might be different where the contract for labor was to complete a job, or for a definite time, or the materials to be furnished was one contract, embracing various kinds or quantities. Again, if the debt for which a lien is filed is a complete one, and entitled to the lien at the time of the claim and statement in clerk's office, and this is filed in clerk's office, and remains there until the time arrives fixed by the act, it should be as good constructive notice as if filed in the office for the first time within the time indicated by the act. In such a case it is in fact on file in the clerk's office at and within the time required by the act. The only difficulty would be, when the statute of limitation barred, whether the court should hold the limitation commenced to run from the actual filing of the statement, or the first day of the 60 which the claimant is allowed to file his claim. But this question is not before the court, and need not be decided, or an opinion indicated.

The statement which is to be filed must be in writing, verified by affidavit setting forth the amount due, and "for which the lien is claimed," and the name of the railroad upon which a lien is claimed. This statute does not require a detailed statement of the claim, but it should set out the amount due, and generally for what it is due. the name of the railroad upon which a lien is claimed, and with it a general description of the property upon which a lien is claimed. This description, however, is not required by the statute, except to show the county where the work has been done or the materials furnished.

These are my views as to the proper construction of the act of 1888, and I have indicated in separate memorandums what should be done with the various demurrers to intervening petitions.