## Grigsby v. L. & E. Ry. Co.

(Decided February 11, 1913.)

### Appeal from Perry Circuit Court.

1.  Statutes—Construction of.—In construing statutes, technical definition of words, used therein, will be rejected, if such definition tends to defeat, rather than effectuate the legislative purpose.

2.  Materialmen's Lien—Liens of Laborers and Materialmen on Railroads—Section 2492, Ky. Stats.—Construction of (See 150 Ky., 557, for original opinion).—Under section 2492, Kentucky Statutes, any man, who under contract, either express or implied, labors

for or furnishes material, supplies or teams, to any subcontractor engaged in the construction or improvement of any canal, railroad, turnpike or other public improvement in this Commonwealth, is entitled to the benefit of the lien provided in said section, and it is immaterial whether such subcontractor took his contract from the original employer, original contractor, or a subcontractor under him.

W. C. EVERSOLE, J. C. EVERSOLE, J. B. EVERSOLE, HER-LINGER, DIXON & STEWART and GEORGE S. HAWKE, for appellant.

E. S. JOUETT, B. R. JOUETT, WOOTTON & MORGAN and S. M. WILSON, for appellee.

RESPONSE TO PETITION FOR REHEARING BY JUDGE LAS-SING.

The opinion in this case will be found in 150 Ky., 557.

In its petition for rehearing, counsel for appellee raise a question not presented in the lower court or in this court, on appeal. They now insist that the statute under consideration (section 2492, Kentucky Statutes) gives a lien for labor, material, supplies, and teams, only to those who have contracts with the owners and to those who make contracts with the immediate contractor; and that no one, who works for, or furnishes supplies, material, and teams to, a contractor to whom a sub-contractor may sublet, has a lien. In support of this construction, it is insisted that no lien exists in favor of any one, not fairly embraced in the language of the statute; and that, when this test is applied to the act, it is apparent that appellant has no lien.

The question is a new one in this jurisdiction, not having been heretofore raised. The particular language of the statute, in question, is: "All persons who perform or furnish labor, material, supplies or teams, * * * * by contract, express or implied, with the owner or owners thereof, or by subcontract thereunder, etc." The object of construction is to arrive at the intent. Now, did the legislature, as contended by appellee, intend, in the use of this language, to protect the property of the railroad from lien against claims asserted by any one, save the contractor and such of the subcontractors as contracted with the principal contractor; or, was the language used intended to put the property of the railroad in lien for labor and material that, by contract, express or implied, were furnished to any subcontractor, in building the road, no matter how many

degrees removed from the owner? There can be no question but that the purpose of this legislation was to protect the laborer and material man. These are the people whom the legislature sought to secure, by providing a safe way of compelling the owner of the road to see, before settling with the contractors and sub-contractors, that those whose labor and material, under contract with such contractors or sub-contractors, went into the work, were settled with. If the construction sought by appellee is adopted, the purpose of this legislation would not only be not carried out but would, in many instances and might in all instances, be entirely defeated. Take, for example, the owners of a railroad determine to build twenty miles of new road. They let a contract, under certain plans and specifications, to A. to do the entire work. A. sublets fifteen miles of the road to B.; B., in turn, sublets ten miles of his fifteen to C.; C. sublets five of his ten miles to D.; and under these contracts the road is completed. A., B., C., and D. each build five miles thereof. Under the construction contended for, the laborers, and material men who furnished supplies, that went into those portions of the road built by A. and B. would have a lien upon the property for their services and the value of such supplies as were furnished by them; while the laborers and material men who furnished supplies to C. and D., in the construction of their portions of the road, would have no such lien. So that, in every case, the right of a laborer and material man to a lien upon the railroad property would depend entirely upon how many degrees removed from the owner, the contractor, under whom he worked and to whom the supplies were sold and delivered, might be, although each sub-contractor built his portion of the road according to the plans and specifications provided for in the original contract. It can readily be seen that such a construction would open the way to the perpetration of fraud and enable designing and unscrupulous contractors to defeat their creditors in the collection of claims for work and material of this character. It is a matter of common knowledge that those, whose labor goes to build the great lines of railway throughout the country, are, in the main, uneducated and utterly incapable of drawing any fine distinctions in interpreting their rights under contracts, and would readily fall an easy prey to the designing and unscrupu-

tous. Such men are usually without means of ascertaining whether their employer is the principal contractor, or a sub-contractor, or a sub-contractor under a sub-contractor; and, knowing that these great public improvements are usually carried on with the labor of men of this class, the legislature purposed to protect their rights by giving to them a lien, and, in the use of the language quoted, gave it a broader meaning than counsel for appellee would admit.

Webster, in his new International Dictionary, defines "sub-contract" to be "a contract under, or subordinate to, a previous contract." And "sub-contractor" to be "one who contracts with a contractor to perform part or all of the latter's contract." The same author defines "thereunder" thus: "Under this or that." Under these definitions, any contract that is under and a part of the original contract is a "sub-contract," within the meaning of the term as used in the statute; and, as the statute makes no distinction between contractors in the first degree, and those remotely connected with the original contractor, we must presume that the legislature intended to treat them all alike. Hence, the language "sub-contract thereunder," as used in the statute, covers all contracts, near or remote, in which the contractor undertakes to carry out and perform the work, according to the terms of the principal contract.

It is not uncommon, in executing big contracts, for the work to be many times sublet and re-sublet; yet the undertaking of all the contractors, no matter how many degrees removed from the owner, but make up the original contract. So, a sub-contract, in the second or third degree removed, is in fact a contract under the original contract, as much so as is the contract in the first degree, that is, a contract with the original contractor. This is evidently what the legislature meant, and it is the only construction that gives force, efficacy and life to the statute. We are aware, in taking this position, that the learned judge of the United States Circuit Court for the District of Kentucky, in Central Trust Co. v. R. N. I. & B. R. Co., et al, 54 Fed., 723, adopted the construction contended for by appellee; and that this opinion was approved by the United States Circuit Court of Appeals in the case of R. & I. Construction Co. v. R. N. I. & B. R. Co., 68 Fed., 105, Judge Lurton writing the opinion; and we would hesitate to adopt a different

construction, if it was not apparent that, in those cases, the court misconceived the legislative purpose in enacting statute, section 2492. These opinions proceeded upon the idea that it was the legislative purpose to limit the lienable liability of a railroad for material, labor and supplies, etc., to those furnished the original contractor and sub-contractors under him; whereas, as we construe the act, its purpose was to secure the claims of the operatives, whose labor, supplies, etc., under contract, built the road; and we, therefore, give to the words "sub-contract thereunder" a broader meaning, so as to effectuate this legislative intention. Railroad owners, under such a construction, will not be imposed upon. They can, in all cases, easily ascertain who, that is, what sub-contractor, is doing the work. The slightest effort on their part will enable them to fully protect themselves against loss in paying for the improvement, but not so, with the laborer and material man. They, as stated, are, in the main, ignorant, uneducated and without means of ascertaining the relations of their employer to the owner. They need the law's protection; and the legislature, realizing this fact, enacted section 2492. The language of this section being susceptible of the construction given it, we reject any technical definition of words, used in the act, which would tend to defeat, rather than effectuate, the legislative purpose; and hold that, under section 2492, any man who, under contract, either express or implied, labors for or furnishes material, supplies or teams, to any sub-contractor engaged in the construction or improvement of any canal, railroad, turnpike or other public improvement in this Commonwealth, is entitled to the benefit of the lien provided in said section, and it is immaterial whether such sub-contractor took his contract from the original employer, original contractor, or a sub-contractor under him. In other words, it is immaterial how many degrees removed from the owners, the sub-contractor, for whom the labor is done and to whom the material is furnished, may be. If he is a subcontractor in the prosecution of the work, and as such, employs men and buys material to carry out his contract, the men so employed by him and those who so furnished material, are entitled to the benefit of the lien provided by this act.

The principle announced by this court in Hightower v. Baily, 108 Ky., 198, cited and relied upon by counsel

for appellee as, by analogy, supporting their contention, is not in conflict with the views herein expressed. In that case Baily and Koerner had a contract to build a grain elevator. They entered into a contract with one Clark, a lumber merchant, for certain lumber to be used in the elevator. To fill his contract, Clark bought a part of the lumber from Hightower. Hightower asserted, and sought to impose, a lien on the grain elevator for the value of the lumber he had sold to Clark. The relief was denied him, because he had no contractual relation with the owner, contractor, sub-contractor, architect, or agent, of the building; nor had any of them consented to his furnishing this lumber. As the statute, under which he was proceeding, gave a lien only to such laborers and material men as had a contract with some one of the designated persons, or had furnished the labor and material for use in the building, with the consent of some one of those enumerated, it was held that he was not entitled to recover. It may be added, however, that section 2463 has always been so construed as to effectuate its purpose, and the relief afforded by it has never been denied a claimant, where the facts show that the work was done, or the material furnished, either under contract with any one of the persons enumerated in the act or by the consent of any one of them.

In the case at bar, the statute gives to appellant a lien, because he brings himself clearly within its provisions. Petition for rehearing overruled.