[No. 28531. Department One. January 10, 1942.]
ARCWELD MANUFACTURING CO., INC., *Respondent,* v.
ROY J. BURNEY, *Defendant,* HOME OWNERS' LOAN
CORPORATION, *Garnishee Defendant,* W. E.
SCHONBEIN, *Appellant.*[1]

[1]Reported in 121 P. (2d) 350.

*T. M. Royce,* for appellant.

*Llewellyn S. Jordan,* for respondent.

STEINERT, J.—This action, in so far as the present appeal is concerned, involves a contest solely between the plaintiff and the defendant W. E. Schonbein, each of whom claims a superior right to a specific fund which represents the balance due and owing on a contract wherein Roy J. Burney, the principal defendant in the suit below, had agreed to alter and repair a certain dwelling house owned by the garnishee defendant

Home Owners' Loan Corporation. Plaintiff claims a superior right to the fund by virtue of a writ of garnishment, obtained against the garnishee defendant at the commencement of this action, to secure a debt owing by defendant Burney to plaintiff. Defendant Schonbein claims a superior right to the fund on the ground that Burney had previously "sublet" to him the entire contract to alter and repair the dwelling house and shortly thereafter had also executed and delivered to him, Schonbein, a power of attorney authorizing the latter to sign all papers, "receipt" money, and pay any and all bills pertaining to the contract job.

The cause was tried to the court without a jury, upon an agreed statement of facts. The court made findings from which it concluded that plaintiff was entitled to the major part of the fund by virtue of the garnishment, and entered judgment accordingly. Defendant Schonbein alone has appealed. We shall hereinafter refer to plaintiff as respondent, and to defendant Schonbein as appellant.

The facts are undisputed and are as follows. A short time prior to March 14, 1939, respondent sold and delivered to defendant Burney goods, wares, and merchandise of the value of two hundred twenty-five dollars, which were used by Burney in the alteration and repair of a certain dwelling house situated at 4128 Greenwood avenue, in Seattle, owned by Home Owners' Loan Corporation, hereinafter referred to simply as HOLC. At about the same time, appellant performed labor of the value of ninety dollars upon the Greenwood avenue house. That particular property, it may be stated here, is not primarily involved in this dispute.

Sometime thereafter, at the instance of Burney, both

the appellant and the respondent executed an instrument waiving their claims to liens upon those particular premises and authorizing HOLC to pay Burney the sum due under its contract with him. HOLC obtained an affidavit from Burney setting forth the amounts of the unpaid claims for labor and materials incurred by him in connection with the work on the Greenwood avenue house and acknowledging that the money received from HOLC should be held as a trust fund, to be applied first to the full payment of all claims of laborers, materialmen, and subcontractors. Burney collected the money from HOLC, but failed to pay the amounts owing to respondent and appellant respectively. The result was that appellant and respondent became mere general, unsecured creditors of Burney in the amounts of their former lien claims.

The events thus far narrated, growing out of the repair of the Greenwood avenue property, are not directly involved in the present proceeding, but have been set forth merely as introductory to the situation about to be described.

Sometime prior to March 31, 1939, Burney entered into another contract with HOLC involving the alteration and repair by Burney of a dwelling house situated at 952 Forty-second avenue north, Seattle, likewise owned by HOLC. Under that contract, Burney agreed to furnish all of the labor and material for such alteration and repair. Subsequently, at a time not specifically shown by the record but concededly prior to April 10, 1939, Burney "sublet" that entire contract to appellant. The record does not disclose the full terms of the contract between Burney and HOLC or the amount that Burney was to receive thereunder, nor does it reveal the terms or conditions of the agreement by which Burney "sublet" the contract to appellant.

The record does show, however, that appellant thereafter furnished all of the material and labor for carrying out the work of alteration and repair of the dwelling house at 952 Forty-second avenue north, which is the property involved in this action. In the prosecution of that work, appellant himself performed labor thereon of the value of $225.85 and paid state industrial insurance premiums amounting to $9.62; he also paid $75 for labor performed by other persons, and $30.67 for material furnished by others, making an aggregate of $341.14 paid for or furnished by appellant. As will presently appear, however, there still remained unpaid third-party claims totaling $640.11, for labor performed and material furnished upon that job. It is admitted that respondent furnished no labor or material in connection with this particular repair work.

On April 10, 1939, which was shortly after Burney had "sublet" the entire contract to appellant, Burney executed and delivered to appellant a power of attorney reading as follows:

"KNOW ALL MEN BY THESE PRESENTS: That R. J. Burney, 1460 Twenty-first Ave. Seattle, Washington has made, constituted and appointed, and by these presents does make, constitute and appoint W. E. Schonbein, of Seattle, Washington, true and lawful attorney for himself and in his name, place and stead to sign my name to any and all papers pertaining to two certain contract jobs, regarding the reconditioning of premises at 952 Forty-second North, and 7400 Forty-fourth St. Southwest, Seattle, Washington [this latter described property is not involved in this action]; receipt money and pay any and all bills pertaining thereto.

"GIVING AND GRANTING unto my said attorney a full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as above described that I might or could do if personally present, hereby ratifying and confirm-

ing all that my said attorney shall lawfully do or cause to be done by virtue of these presents.

"In Witness Whereof I have hereunto set my hand and seal this 10th day of April, A. D., 1939.

Signed, Sealed and Delivered

    in presence of       Roy J. Burney (Seal)"

We have set forth the body of the instrument in full for the reason that it forms the crux of the issue between the litigant parties.

The amount of the final payment due from HOLC on the contract which it had with Burney and which Burney had "sublet" in its entirety to appellant was $984.50. Before the payment was made or was attempted to be collected, however, respondent commenced the present action, seeking to recover from Burney the sum of $225 for the merchandise previously supplied to Burney in connection with the alteration and repair of the Greenwood avenue house first mentioned above. At the same time, respondent procured a writ of garnishment directed to HOLC. Appellant Schonbein and the third-party claimants above mentioned were also made parties defendant in the action. On August 10, 1939, respondent obtained judgment against Burney in the full amount of its claim, together with interest and costs.

Thereafter, on December 30, 1939, all the parties to this action except Burney entered into a stipulation, pursuant to the terms of which HOLC delivered to appellant its check for $984.50 payable to the order of Burney, in return for which all the parties to this action except respondent released it from further liability. Appellant, as attorney in fact for Burney, and pursuant to the further terms of the stipulation, endorsed and cashed the check and, out of the proceeds, paid a total of $24 in costs to HOLC and respondent, and an aggregate of $626.50 on account of the un-

paid third-party labor and material claims mentioned above, this latter item representing satisfaction of 97.88% of the various claims of the additional defendants. The balance of the sum paid over by HOLC, amounting to $334, was converted into a cashier's check which was made payable to appellant but was delivered to his attorney of record to be held by the latter until the court should determine, in this action, whether respondent or appellant has a superior right to that fund.

The trial court, after consideration of the agreed statement of facts as hereinabove outlined, entered judgment directing that respondent be paid the sum of $256.71 out of the money held by appellant's attorney of record.

As already indicated, respondent's status with respect to the fund in question is simply that of a garnishing creditor. It is well settled that the rights of a garnishing creditor are no greater than those of his debtor, and if the debtor cannot recover against the garnishee, then his creditor is under a similar disability. *Austin v. Wallace,* 117 Wash. 61, 200 Pac. 566; *McCann v. Reeder,* 178 Wash. 126, 34 P. (2d) 461; *Commercial Importing Co. v. Wear,* 180 Wash. 669, 41 P. (2d) 777; *Eakle v. Hayes,* 185 Wash. 520, 55 P. (2d) 1072. The question in issue is therefore to be determined as though it were one solely between Burney and appellant as to their respective rights in the sum due under the contract with HOLC originally entered into by Burney but later "sublet" by him to appellant.

According to the agreed statement of facts, Burney "sublet said entire contract [referring to the contract between Burney and HOLC]" to appellant. The record affords no further light as to the terms or details of the subletting agreement other than what might be inferred from the fact that appellant himself car-

ried out the entire contract, furnished all the labor and material required, personally performed a part of the labor, actually paid for some of the labor and material furnished by third parties, and paid industrial insurance premiums accruing to the state of Washington.

In their briefs, both parties refer to appellant as a subcontractor, and it is our conclusion that such was his status, rather than that of an assignee of Burney's contract with HOLC, regardless of the fact that appellant himself ultimately carried out that contract. A subcontractor is one who contracts with a principal contractor to perform all or part of the work or services which the principal contractor has already contracted to perform. *Hihn-Hammond Lumber Co. v. Elsom*, 171 Cal. 570, 154 Pac. 12, Ann. Cas. 1917C, 798; *Grigsby v. L. & E. R. Co.*, 152 Ky. 164, 153 S. W. 232; *Smith v. Wilcox*, 44 Ore. 323, 74 Pac. 708, rehearing denied, 75 Pac. 710; *Fitzgerald v. Neal*, 113 Ore. 103, 231 Pac. 645; *Producers' Lumber Co. v. Butler*, 87 Okla. 172, 209 Pac. 738; *Republic Supply Co. v. Allen* (Tex. Civ. App.), 262 S. W. 113; *Marsh v. Rothey*, 117 W. Va. 94, 183 S. E. 914. For a full list of cases defining the word "subcontractor" see 60 C. J. 669; 40 Words and Phrases (Perm. ed. 1940) 340, *et seq.*

In this instance, according to the agreed statement of facts, HOLC let the original contract to Burney, and the latter, in turn, "sublet" that contract to appellant. Burney's relation to HOLC with reference to the contract, however, was not changed by the subletting agreement; he still remained obligated to HOLC for the performance of the contract and, likewise, was still entitled to look to HOLC for the compensation due thereunder. On the other hand, appellant did not, by his agreement with Burney, supplant the latter in his

relation to HOLC, nor did he create any legal relation between himself and HOLC so far as the original contract was concerned. However great a personal interest appellant may have had in performing the work under the subletting agreement, he had no legal interest in Burney's contract with HOLC.

Appellant's relation to Burney and HOLC comes squarely within the definition of "subcontractor" just given. Burney was the principal contractor, having agreed to perform certain work; HOLC was the party with which that contract had been made and which accordingly was entitled to retain its relation with Burney; and appellant was a party contracting with the principal contractor to perform the work which the latter had previously contracted with another to perform. If Burney and appellant had intended to effect an *assignment* of the original contract, it would have been a simple matter, as well as the natural thing, to do so by the use of plain, unambiguous language. In that circumstance, however, HOLC might have had a voice, under the terms of its contract, the full provisions of which are not made apparent by the record; but HOLC had no voice, and could have exercised none, with respect to the agreement by which Burney merely "sublet" to appellant, for, under that agreement, appellant was simply a subcontractor working under Burney.

With this understanding of the precise relations existing among the several parties, we approach the question upon which the particular litigants herein are in disagreement, namely, the effect of the power of attorney set forth above. Appellant contends that the instrument constituted *a power coupled with an interest*; that it was therefore irrevocable; and that, being irrevocable from its inception, it conferred upon him a right to the fund in question, prior and superior

to any right which respondent might assert by virtue of its writ of garnishment. Respondent, on the other hand, contends that the instrument did not, under the agreed facts of the case, constitute a power coupled with an interest; that it was therefore a revocable power; and that, the power being revocable, any right conferred thereby on appellant became junior and subordinate to the lien of the garnishment, for the reason that, at the time when the writ of garnishment was served, appellant had not yet exercised the power of attorney, so far as the fund here involved was concerned.

In considering the disputed question, two circumstances should be noted:   (1) The power granted to appellant to "receipt" and disburse the fund had not been exercised at the time the writ of garnishment was served, but (2) Burney has never revoked the power conferred by the instrument. This latter fact, however, does not affect the situation, because, under the law, if the power was intrinsically *revocable* by Burney, it would be immaterial whether or not it had been actually revoked by him; in either event, any right existing under an unexercised, revocable power would be subordinate to the lien of a writ previously garnishing the fund.

By "power of attorney" is commonly meant an instrument in writing by which one person, as principal, appoints another as his agent and confers upon such agent the authority to act in the place and stead of the principal for the avowed purpose, or purposes, set forth in the instrument.  Subject only to certain exceptions shortly to be noted, the principal may revoke the power of attorney at any time, either with or without reason.  As stated in 1 Mechem, Agency (2d ed. 1914), 401, § 563:

. "It is the general rule of law, therefore, that the authority of the agent may be revoked by the principal at his will at any time, and with or without good reason therefor. Authority of this nature is often termed a bare or naked power; and it is but to restate the general rule in different form to say, as it is so often asserted, that a bare power is revocable at the will of the principal at any time."

A host of cases pronouncing that rule may be found in 2 C. J. 528, Agency, § 151, n.30, and in 2 C. J. S. 1153, Agency, § 73, n.52. See, also, 21 R. C. L. 886, Principal and Agent, § 59; 2 Am. Jur. 39, Agency, § 38.

To this rule, however, there are two universally recognized exceptions: (1) Where the authority or power is coupled with an interest, and (2) where the authority is given as part of a security, or is necessary to effectuate such a security. In either of such cases the power is irrevocable.

A "power coupled with an interest" is a power or authority to do an act, accompanied by or connected with an interest in the subject or thing itself upon . which the power is to be exercised, the power and interest being united in the same person. *Hunt v. Rousmanier's Administrators,* 8 Wheat. (21 U. S.) 174, 5 L. Ed. 589.

This court has likewise expressed that conception of the term, in the following language:

"A power coupled with an interest must be an interest in the thing itself, and the power must be ingrafted on an estate in the thing, and power and interest must be united in the same person." *Hamlin v. Case & Case, Inc.,* 188 Wash. 150, 61 P. (2d) 1287.

For extensive lists of cases defining and illustrating a "power coupled with interest," see Note (1929), 64 A. L. R. 380; 33 Words and Phrases (Perm. ed.) 149, *et seq.*; 2 C. J. S. 1159, Agency, § 75; 2 Am. Jur. 62, Agency, § 78.

As pointed out in the authorities above cited, it is necessary that the "interest" be in the subject matter of the power, and not merely in that which is produced by the exercise of the power; for, if the agent's interest exists only in the proceeds of the execution of the power, the interest comes into being only after the power is exercised and extinguished, and hence the two are never united.

The power of attorney in this instance does not constitute a power coupled with an interest, for the reason, already indicated, that appellant had no interest or estate in the money payable under the contract between HOLC and Burney; appellant had, at most, merely an interest in the proceeds of the fund in the event that he should collect it, which he did not do. Appellant's interest in the fund could come into existence only by the exercise of the power conferred. In the *Rousmanier* case, *supra*, Chief Justice Marshall used the following language in refuting the argument that a power coupled with an interest arises where there is merely an interest in the thing to be produced by the exercise of the power:

"But if we are to understand by the word 'interest,' an interest in that which is to be produced by the exercise of the power, then they are never united. The power, to produce the interest, must be exercised, and by its exercise, is extinguished. The power ceases when the interest commences, and, therefore, cannot, in accurate law language, be said to be 'coupled' with it."

■ The second exception to the general rule that a principal may revoke the power at will arises where the authority is given as part of a security or is necessary to effectuate such security. In such cases the "interest" of the agent is something more than an interest in being permitted to exercise the power, yet

something less than an estate in the subject matter or thing upon which the power is to be exercised. The purpose of the power of attorney in such cases is ordinarily to afford to the agent protection for money advanced or obligations incurred by him. In such situations, the power of attorney is deemed irrevocable, whether or not it has been expressly so made by the terms of the instrument. 1 Mechem, Agency (2d ed. 1914), § 576; 2 C. J. 530, Agency, § 153; 2 C. J. S. 1154, Agency, § 73b.

In *Hunt v. Rousmanier's Administrators, supra,* Chief Justice Marshall states the exception thus:

"Where a letter of attorney forms a part of a contract, and is a security for money, or for the performance of any act which is deemed valuable, it is generally made irrevocable in terms, or if not so, is deemed irrevocable in law."

Where, however, irrevocability is claimed because of advances made or obligations incurred, it must appear not only that the advances were made or the obligations incurred, but also that the power was given to secure their repayment. 1 Mechem, Agency (2d ed. 1914), § 580.

In the instant case, the burden was, of course, upon appellant to establish facts bringing him within the exception. He has not done so. The power of attorney was not a part of the subletting agreement, but was executed sometime thereafter. Furthermore, the letter of attorney does not state or imply that it was given as security, nor is there in the record any evidence that any security had previously been given, the effectuation of which required the execution of such letter. Whatever may have been the actual transaction or understanding between Burney and appel-

lant with reference to the reason for giving the power of attorney, the agreed statement of facts reveals nothing other than that Burney simply executed and delivered the instrument to appellant. Had the instrument been intended as security, it would seem that it would at least have identified the particular funds which it was intended to reach, instead of employing the general term "receipt money," without reference to the persons or parties from whom such money was to be received. It is also to be noted that the power of attorney authorized appellant to "receipt money" and pay bills pertaining not only to the premises at 952 Forty-second north, which is the property involved in this action, but also pertaining to the dwelling located at 7400 Forty-fourth southwest, in which, so far as the record shows, appellant had no concern whatever.

Appellant might have protected himself, in this instance, in any one of many ways. He might have taken an assignment of the contract between Burney and HOLC. He might have taken an assignment of the funds due Burney thereunder. He might have made his power of attorney a part of the contract of subletting. He might have had the power of attorney specifically provide that it was for security, or to effectuate a security already given. And, finally, he might have filed a lien upon the premises for labor performed and material furnished by him. He did none of these things, but contented himself with taking an instrument which, as we now hold, constituted nothing more than a revocable power. Since the power was not exercised prior to the service of the writ of garnishment, appellant's right to the fund here in question became subordinate to the right ac-

quired by respondent by virtue of the lien of the writ.

Appellant relies very strongly upon the case of *Pacific Coast Co. v. Anderson* (C. C. A. 9th), 107 Fed. 973. In that case, however, the power of attorney by its recitals not only indicated, but in fact definitely stated, that the power was given as security for the protection of the owner of a vessel against the charterer's nonperformance of the terms of the charter agreement.

Appellant contends, further, that the power of attorney by which he was authorized to collect the funds constituted an equitable assignment of such funds. This court has in a number of cases stated the rule with respect to equitable assignments to be, in the language of 5 C. J. 909, Assignments, § 78, as follows:

"In order to work an equitable assignment *there must be an absolute appropriation* by the assignor of the debt or fund sought to be assigned to the use of the assignee. The intention of the assignor must be to transfer a *present interest in the debt or fund or subject matter*; if this is done the transaction is an assignment; otherwise not." (Italics ours.)

Cases in which that rule has been stated are: *Anderson v. Farmers State Bank*, 130 Wash. 236, 226 Pac. 1011; *Nickerson v. Hollet*, 149 Wash. 646, 272 Pac. 53; *Sneesby v. Livington*, 182 Wash. 229, 46 P. (2d) 733. See, also, *Hossack v. Graham*, 20 Wash. 184, 55 Pac. 36; *American Savings Bank & Trust Co. v. Lawrence*, 114 Wash. 198, 194 Pac. 971; *Redemptorist Fathers v. Purdy*, 174 Wash. 358, 24 P. (2d) 1089.

In the case at bar, there was no assignment nor absolute appropriation of the fund; there was no transfer of any present interest in the fund; nor does the record disclose any evidence of an intention to transfer any such interest to appellant. All that we have here is a power authorizing appellant to "receipt" money

and pay certain bills. We therefore cannot accede to appellant's claim that the power of attorney constituted an equitable assignment of the fund.

The judgment is affirmed.

ROBINSON, C. J., MAIN, MILLARD, and DRIVER, JJ., concur.

[1]Reported in 121 P. (2d) 346.