**WOODSON BEND, INC., Appellant,**

v.

**MASTERS' SUPPLY, INC., General Electric Company, Cardinal Kitchens, Inc., and V. E. Anderson Mfg. Co., Appellees.**

No. 76–401.

Court of Appeals of Kentucky.

Sept. 1, 1978.

Eugene L. Mosley, John A. Nold, Nold, Mosley, Clare & Rogers, Louisville, for appellant.

John T. Bondurant, Brown, Todd & Heyburn, William R. Mapother, Mapother & Mapother, Marvin R. O'Koon, Joseph C. Oldham, Louisville, for appellees.

Before MARTIN, C. J., and HAYES and HOWARD, JJ.

MARTIN, Chief Judge.

This is an appeal of a judgment of the Jefferson Circuit Court upholding a lien against property in Pulaski County for materials supplied to a modular home manufacturer in Jefferson County. The issue before us is whether a lien follows the modular home to its ultimate destination or is extinguished when it is removed from the construction site.

## THE FACTUAL BACKGROUND

On July 5, 1972, Woodson Bend, Inc. entered into a contract with Unex Building Systems, Inc. to manufacture, deliver and erect on the Woodson Bend site in Pulaski County sixty modular housing units. Unex Building Systems, Inc. was referred to as UBS throughout this contract. According to the terms of the contract, "All foundations upon which modules will be placed, and all utility connections shall be made and constructed by UBS according to plans and specifications prepared by UBS." Furthermore, it specified that "Erection of modules at the foundation on site, including all interior and exterior trim and all finishing work will be done by UBS."

Beginning on June 20, 1972, and extending through August 18, 1972, the appellee Masters', pursuant to contract with Unex, furnished materials which Unex used to fabricate the forty modular units which were placed on the Woodson Bend property. These materials consisted of hot and cold water pipe and fittings, waste and vent systems, sinks and drains, commodes, wash basins and "all the brass to trim them out with along with the water heaters . . ."

Substantially all of the items that Masters' furnished Unex for the Woodson Bend project were furnished pursuant to written purchase orders from Unex to Masters' which specified that the material was for the Woodson Bend project. Each invoice of Masters' for material that Masters' furnished Unex for the Woodson Bend project specifically referred to the Woodson Bend project. During construction of the modular units a Masters' representative observed the items which Masters' furnished to Unex being installed in the Woodson Bend units at the Unex plant. An exhaustive visual on-the-site examination by Masters' confirmed that the forty modular units fabricated by Unex which are presently on the

Woodson Bend site contain items identical to the material furnished by Masters' to Unex. The gross price of the materials furnished by Masters' to Unex and used in these forty units was determined by the trial court to be $12,201.23.

Beginning on June 29, 1972, and extending through September 26, the Appellee Anderson furnished windows and window screens to Unex which were also used by Unex in the construction of the forty modular units which were placed on the Woodson Bend property. The gross price of these materials was determined by the Circuit Court to be $6,284.03.

Beginning on July 10, 1972, and extending through October 6, 1972, the appellee Cardinal Kitchens, pursuant to purchase orders with Unex, furnished materials which Unex used to fabricate the modular units which were placed on the Woodson Bend property.

All of the items that Cardinal Kitchens furnished Unex for the Woodson Bend project were furnished pursuant to a written purchase order from Unex to Cardinal Kitchens which specified that the material was for the Woodson Bend project. On or about February 7, 1975, the attorneys for Woodson Bend entered into a stipulation with Cardinal Kitchens stating "a total of at least forty (40) prefabricated apartment units were purchased by Woodson Bend from Unex Building Systems, Inc., and were erected on sites at Woodson Bend. Each of these apartment units contain one U–shaped Post Form Top and one Self-Edge Vanity Top". The gross price of the materials furnished by Cardinal Kitchens to Unex and used in these forty (40) units was determined by the Circuit Court in its judgment to be $3,830.00.

Beginning in early July, 1972, and extending through September 11, 1972, the appellee General Electric, pursuant to a contract with Unex, furnished central air conditioning and heating equipment which Unex installed in the forty modular units which were placed on the Woodson Bend property.

The equipment was furnished pursuant to a Unex Purchase Order dated June 29, 1972, which specified the job name as "Woodson Bend I". John McCarthy, Manager of Operations for General Electric, approved the sale under the terms of the Purchase Order at a meeting on July 5, 1972, with Katherine Peden, President of Unex. His notes, written at the meeting, clearly indicate that all the General Electric equipment was to be used on the Woodson Bend project and that General Electric would have the right to assert a materialman's lien against the Woodson Bend property if payment were not made as agreed. The notes show an agreement whereby 10% of the purchase price of each unit would be paid the first of the month following delivery to Unex and the 90% balance when the modules were delivered to Woodson Bend.

During the course of litigation, a General Electric representative met with Woodson Bend representatives at the Woodson Bend job site, at which time a visual inspection was made of the materials furnished Unex by General Electric. In the course of this job site inspection, they compared the serial numbers on each of the heating and air conditioning units with the serial numbers on the individual shipping documents and warehouse releases which had been prepared by General Electric at the time of shipment to Unex. This serial number comparison confirmed that the forty modular units fabricated by Unex and located on the Woodson Bend site contained the heating and air conditioning units supplied by General Electric to Unex. The contract price of the materials furnished by General Electric to Unex and used in these forty units was determined by the trial court to be $16,021.20.

In addition to contracting with the appellees and others for materials, Unex further undertook to perform its contract with Woodson Bend by subcontracting with Jack Carr Construction Company to build and prepare foundations at Woodson Bend for the modular units and by leasing a crane from McKinney Construction Company with which to erect the modular units on these foundations.

George Brown, President of Woodson Bend, testified that a considerable portion of the modular construction, including carpentry work, carpeting, dry walling, finishing, painting and roofing, was to be completed by Unex on the Woodson Bend site.

By September, 1972, through no fault of the appellees, and without their knowledge, Unex was apparently encountering some difficulty in adhering to the production, delivery and erection schedule contained in the July 5, 1972, agreement.

In a series of letters to Unex and its counsel, counsel for Woodson Bend affirmed its intention to insist that Unex fully comply with the provisions of that agreement and confirmed its understanding that Unex intended to perform its obligations under that agreement.

Specifically, in his September 18, 1972, letter, counsel for Woodson Bend outlined Unex's duties under the July 5, 1972 agreement to manufacture, deliver and erect the modular units and to make and construct all foundations upon which the units were to be placed and requested that Unex furnish Woodson Bend by September 21, 1972, "a statement from . . . all potential lienholds that they have firm contracts for performance with Unex".

On September 26, 1972, Woodson Bend and Unex entered into an agreement by which Unex sold 32 modular units (64 modules) to Woodson Bend for $249,815.04. Twenty-four of these units (48 modules) had already been partially erected on the Woodson Bend site. Two units (four modules) were at the Pulaski County site but not yet erected and six units (12 modules) were still at the Unex plant.

Subsequently, on October 5, 1972, a second agreement was reached between Unex and Woodson Bend by which Woodson Bend purchased eight modular units (16 modules) for $62,453.76. Thus, forty of the sixty modular units called for in the original July 5, 1972, agreement were ultimately received by Woodson Bend.

At the time of the September 26, 1972 agreement, Woodson Bend obtained from Unex a Certificate of Delivery, Production and Lien Release which provided in part:

It is further certified that the suppliers of all material and services at the Wood son Bend site in regard to the modules listed have been paid in full, with the exception of those listed and set forth on Schedule "C" attached hereto.

And it is further certified that on all modules listed in Schedules "A" and "B" attached hereto there has been received by Unex Building Systems, Inc., no notice of any liens filed nor notice of intent to file a lien, and all of the said modules are free and clear of all liens and encumbrances, except as otherwise set forth herein.

Woodson Bend's awareness of the exposure of its property to the potential lien claims of persons who had furnished labor or materials to Unex, at the plant site as well as at the property site, is further demonstrated by the steps which Woodson Bend took to protect itself from such lien claims.

On October 2, 1972, pursuant to the September 26, 1972 agreement between Unex and Woodson Bend, Woodson Bend paid $4,194.00 jointly to Unex and Arrow Electric Company. Arrow Electric had evidently furnished services to Unex at its plant site.

On or after October 11, 1972, Woodson Bend paid a total of $10,766.57 by joint checks with Unex to sixteen different Unex suppliers. Although these accounts are listed as having been payable as of September 8, 1972, only two of the sixteen are listed on the schedule of unpaid suppliers at the Woodson Bend site which is attached to Unex's September 26, 1972 Certificate, and for significantly different amounts.

Woodson Bend never received the statement from all potential lienholders which its counsel had requested in his September 18, 1972 letter, since none of the appellees furnished such a statement. Nevertheless, subsequent to September 18, 1972, for the forty units (80 modules) Woodson Bend paid Unex and Business Development Corporation of Kentucky jointly the sum of $202,-112.56 and paid Unex alone a total amount of at least $87,993.58.

None of the appellees received any payment from Unex, or from Woodson Bend on behalf of Unex, with respect to the materials which the appellees furnished Unex for the Woodson Bend project, excluding the payments made by Woodson Bend after entry of the judgments in favor of the appellees by the Circuit Court.

Within the 120-day period prescribed by K.R.S. 376.010(3) each of the appellees gave Woodson Bend proper notice of its intention to claim a lien against the Woodson Bend property by reason of having furnished material by contract with Unex for the improvement of that property.

Within the six-month period prescribed by K.R.S. 376.080, each of the appellees filed a proper statement of lien against the Woodson Bend property in the Pulaski County Court Clerk's office.

Each of these liens was subsequently discharged from the Woodson Bend property by means of a bond filed pursuant to K.R.S. 376.100 by Woodson Bend as principal and Stephen B. Kelley and C. C. Adams as sureties under which Woodson Bend and Messrs. Kelley and Adams bound themselves, jointly and severally, to satisfy any judgment rendered in favor of the appellees.

## THE PROCEDURAL BACKGROUND

On May 30, 1973, appellees Masters' Supply, Inc. and General Electric Company brought Action No. 174199 in Jefferson Circuit Court, Common Pleas Branch, to enforce materialmen's liens filed pursuant to K.R.S. 376.010. Subsequently, Pulaski Circuit Court Civil Action No. 6169, styled *Woodson Bend, Inc. v. Masters' Supply, Inc. et al.,* in which appellees Cardinal Kitchens, Inc. and V. E. Anderson Mfg. Co. had asserted their materialmen's lien claims, was transferred to the Jefferson Circuit Court by an agreed order entered on October 16, 1973, and was consolidated for all purposes with the Jefferson Circuit Court action. On January 10, 1974, the Circuit Court sustained appellees' motion for dismissal of all claims asserted by the appellant, Woodson Bend, Inc., in its complaint originally filed in Pulaski Circuit Court and in its counterclaim filed in Jefferson Circuit Court.

On July 14, 1975, the Circuit Court entered a summary judgment in favor of General Electric against Woodson Bend and C. C. Adams and Stephen B. Kelley, the sureties on its lien release bond, jointly and severally. On October 27, 1975, the Circuit Court entered summary judgments in favor of Cardinal Kitchens and Anderson against Woodson Bend and Messrs. Adams and Kelley, jointly and severally.

On November 21, 1975, a trial was held on Masters' claim before the court without a jury. On January 21, 1976, the Circuit Court entered appropriate findings of fact and conclusions of law with respect to Masters' claim and entered judgment in favor of Masters' against Woodson Bend and Messrs. Adams and Kelley, jointly and severally. Thereafter, Woodson Bend alone took this appeal. Messrs. Adams and Kelley have not appealed from any of the judgments entered against them.

## THE FINDINGS OF THE TRIAL COURT

The Circuit Court specifically found that when Masters' furnished materials to Unex for the Woodson Bend project, Unex was contractually obligated to build, deliver and erect the modular housing units on the Woodson Bend property and was, accordingly, the contractor for the construction of these units on the property. This finding was based upon the contractual language that, "All foundations upon which modules will be placed, and all utility connections shall be made and constructed by UBS [Unex] according to plans and specifications prepared by UBS". The contract between Unex and Woodson Bend also provided that, "Erection of modules at the foundation on site, including all interior and exterior trim and all finishing work will be done by UBS".

The testimony of George T. Brown, President of Woodson Bend, Inc., reflects the nature of the relationship between Woodson Bend and Unex by virtue of the July 5, 1972 contract, as held in the trial court's findings.

Q.46. Did the contract call for Unex to do the coating and mopping?

A. The original contract did.

Q.47. By that do you mean the July 5 contract?

A. I do.

Q.48. And that work could not have been done at the factory; did it have to be done on the site?

A. That work had to be finished on the site, that's exactly right.

Q.49. And the carpentry work that was uncompleted had to be done on the site?

A. That's right.

Q.50. And the carpeting?

A. Right.

Q.51. And the trim?

A. That's right.

Q.52. So where they defaulted was in the work that could not be done at the factory; it was work that had to be done on the site after the boxes were joined together, and it was their obligation to do this work, and they didn't do it, so you deducted it from what you paid them; now, is that entire statement true?

A. What they did, they defaulted in their original contract that they had with us. None of the work was anywhere near complete. We bought boxes from them, took it over and did it ourselves and did the construction on site at the finishing of the units. What they defaulted in was their contract. You read this one, and you read the September 18th letter which outlines various areas of default, and you'll see what they didn't do.

This testimony establishes there was no question that Unex was contractor for Woodson Bend under the July 5, 1972 contract. One who is merely obligated to furnish materials to an owner or contractor is a materialman. One who not only is obligated to furnish materials but also to perform on-site work with respect to them is a contractor within the meaning of the mechanic's lien statute.

Despite the provisions in the July 5, 1972 agreement, which made Unex a contractor for Woodson Bend, the appellant argues the appellees were not entitled to assert materialmen's liens against the Woodson Bend property because Unex failed to perform that agreement to the satisfaction of Woodson Bend and because Unex and Woodson Bend renegotiated that agreement or entered into a new agreement subsequent to the time that the appellees furnished material to Unex for the Woodson Bend project.

It has been held that the right of one who furnishes material to a contractor to assert a lien against the property involved is not affected by any defect or default in the contractor's performance. The court said in *Rieger v. Schulte & Eicher*, 151 Ky. 129, 151 S.W. 395, 398 (1912):

The sole question for determination . . . is, Was the material furnished by these claimants of the quality called for in the contract . . . ? If so, they were entitled to a judgment for the respective amounts claimed by them, without regard to the character of work done by the contractor himself or other subcontractors or materialmen.

Although there are no Kentucky cases in point, the consensus of the decisions in other jurisdictions is that where the material has already been furnished to the contractor, the validity of the materialman's lien against the owner's property cannot be affected by a subsequent agreement between the owner and the contractor, of which the materialman has no notice, which changes the relationship between the owner and the contractor.

In *Kierns v. Gibson*, Mo.App., 289 S.W. 358 (1927), the evidence indicated that the plaintiff had entered into a contract with someone representing to be an agent of the owner to furnish and install plumbing fixtures in a new residence. The owner resisted the lien subsequently asserted by the plaintiff on the ground that the person with whom the plaintiff contracted was the general contractor and not the owner's agent. The jury found that the contract by which this person had become the general contrac-

tor was not entered into until after the plaintiff had done some of the work called for by his contract.

In holding that the plaintiff, not having been advised of any change in the relationship between the owner and his agent, was not bound by any contract executed between them whereby the agent became the general contractor, the court held, page 362:

The rights of subcontractors, materialmen, and workmen cannot be affected by any subsequent agreement between the owner and the contractor to which they have not assented and of which they had no notice, or by any act or waiver of the original contractor.

In *Rapp v. Horgan*, 101 Cal.App. 605, 281 P. 1034 (1929), an individual contracted with a lessee to make certain repairs to the leased premises, agreeing to furnish the necessary labor and materials. As the work progressed, the lessee began to pay the laborers directly. The court held, however, that this fact did not change the individual's status from that of a contractor to a materialman. In the court's view the terms of the contract governed the nature of the relationship between the parties.

The holdings in *Kierns* and *Rapp* are supported by such Kentucky authority as might be applicable by analogy. K.R.S. 376.010 provides that the mechanic's or materialman's lien, if asserted as provided, relates back and takes effect from the time of the commencement of the labor or the furnishing of material. Likewise, in *Vass v. Otting*, 22 Ky.L.Rep. 551, 58 S.W. 433 (1900), it was held that the validity of a mechanic's or materialman's lien was determined under the law in force at the time the labor or material was furnished.

■ Logically, then, if the Kentucky authority holds the lien takes effect at the time the material is furnished, and its validity is to be determined under the law in effect at that time, the status of the parties involved, that is, the owner, contractor and materialman, must also be proven as of the time the material is furnished and governed by the contract or contracts in effect at that time.

■ Applying these principles to the present case, the status of Unex insofar as the appellees' lien rights are concerned must be determined by the terms of the July 5, 1972 agreement under which even the appellant acknowledges that Unex was a contractor.

As late as September 21, Woodson Bend was insisting that Unex perform under that agreement.

The appellant does not dispute the fact that the appellees furnished the material for which they have respectively asserted liens and that such material was incorporated in the modular housing units fabricated by Unex in Louisville which are presently situated on the Woodson Bend property on Lake Cumberland. Nor does the appellant raise any issue concerning the statutory notice and filing requirements. It does argue that the movement of the modular unit defeats the lien.

■ In *Grigsby v. Lexington & E. Ry. Co.*, 152 Ky. 164, 153 S.W. 232 (1913), it was held that only the original contractor, or his subcontractor or materialman, can assert a lien. It was emphasized that, considering the broad scope of the statute,

. . . it is immaterial how many degrees removed from the owners the subcontractor for whom the labor is done and to whom the material is furnished, may be. If he is a subcontractor in the prosecution of the work, and, as such, employs men and buys material to carry out his contract, . . . those who furnished material . . . are entitled to the benefit of the lien provided by this act. 153 S.W. at 234.

The protection afforded by the Kentucky mechanic's lien law extends to the materialman who furnishes material to a remote subcontractor, away from the job site, so long as the material is ultimately used to improve the property involved. Because the appellees were materialmen of a contractor, it is unnecessary to extend the scope of the mechanic's lien statute to its maximum limit in order to sustain the appellees' lien rights.

The language of the statute clearly indicates that the primary burden is on the property owner, since he is receiving the benefit of the labor and material furnished for the improvement of his property and since he controls the disbursement of the funds used to pay for the improvement. This philosophy was unequivocally confirmed by this court in *N. O. Nelson Mfg. Co. v. Mann,* Ky., 71 S.W. 851, 852 (1903), where the Court said:

> The owner of the [property] pays money to his contractor at his peril. It is immaterial whether he knows of the claim or not. The statute casts upon him the duty . . . of seeing to it that the materialmen who have furnished material for the work provided for by the contract are paid. No payments made by him to his contractor will relieve him of this duty, and, as said before, the question of whether or not he knew of the claims of the materialmen at the time of the payment to the contractor is entirely immaterial.

The basic argument of appellant fails when the facts are considered. Unex is not to be considered only a materialman but is a contractor. K.R.S. 376.010 was intended to protect the appellees. We believe that the findings of the trial court are supported by substantial evidence.

The judgment of the Jefferson Circuit Court is affirmed.

All concur.